# UNITED STATES CIRCUIT COURT

## FOR THE DISTRICT OF WEST VIRGINIA.

---

## CHARLESTON.

### November, 15, 1889.

### *WAKEMAN v. THOMPSON.

Appendix.
32    1
39   592

J. J. JACKSON, JUDGE:

It is alleged in the original and first amended bill in this cause, that the plaintiff was the owner of 60,000 acres of land lying mostly in Boone county, in this state, a part of which is in controversy in this suit: That for the years 1869 and 1870 it was returned delinquent by the sheriff of Boone county for the non-payment of taxes thereon, in the name of the plaintiff; that on the 12th day of October, 1871, it was sold by the sheriff of Boone county for the non-payment of taxes thereon, and was purchased by the state, not being redeemed by the owner within the time prescribed by law; that the land was certified by the then auditor of state "as land within said Boone county forfeited to the state of West Virginia in the name of Burr Wakeman, for the non-payment of the taxes thereon for the years 1869 and 1870;" that afterwards, the defendant, Thompson, commissioner of school lands for Boone county, filed his petition in the Cir-

---

*This opinion delivered by Hon, J. J. Jackson, Judge of the U. S. District Court, for the District of West Virginia, passes upon questions of interest to the profession in this State and is therefore included in this volume,

cuit Court for that county, to have the said land sold for the benefit of the school fund, and a decree being obtained for that purpose, the commissioner sold a portion of the land and made conveyance to the purchasers thereof. ·

The bills allege numerous irregularities and illegalities in the proceedings as reasons why the sales and deeds should be declared illegal and void. After the filing of the origina and first amended bills the plaintiffs allege, that they dis covered other errors, irregularities and illegalities in the proceedings of the sheriff and recorder of Boone county in relation to the sale of the land, and the report thereof to the recorder by the sheriff, and the recordation thereof by the recorder, which would render the proceedings absolutely null and void, and that in fact no forfeiture of said tract of land ever occurred. For this reason the second amended and supplemental bill was filed, setting up these facts. The defendants filed their answer in reply to the allegations of the bill, amended and supplemental bill setting up various defences, amongst others, the sale of the land for the non-payment of taxes under the decree of the Circuit Court of Boone county, relying upon the defence that the Courts of the United States were without jurisdiction to pass upon the validity of the title to the lands claimed herein, for the reason that the deeds having been made in pursuance of an order of the Circuit Court sitting for the county of Boone, where the lands lie, such sales could only be set aside and avoided by the decree of the court which directed them to be made.

In this last position I do not concur. The plaintiffs are citizens of New York, and the defendants being citizens of West Virginia, the controversy between the parties is one between citizens of different states, and therefore, by the constitution and laws of the United States, is one of which the proper court of the United States may take cognizance in some form.

The question to be determined here is, whether the orders of the Boone Circuit Court, under which the lands in dispute were sold, are conclusive and binding upon the plaintiffs, when assailed in an independent collateral proceeding, may be decided as well here as in the state court.

The presence of such a question in the case does not affect the jurisdiction of this Court, for it is competent for the Federal Court in a controversy between citizens of different states to pass upon the question whether the state court had jurisdiction or power to order the lands in question sold by the school commissioner. *Payne* v. *Hook*, 7th Wallace, 425; *Johnson* v. *Waters*, 111 U. S., 340; *Arrowsmith* v. *Gleason*, 129th U. S., 86.

In the last case referred to the court said: "These principles control the present case, which although involving rights arising under judicial proceedings in another jurisdiction, is an original, independent suit for equitable relief between the parties; such relief being grounded upon a new state of facts, disclosing not only imposition upon a court of justice, in procuring from it authority to sell an infant's lands when there was no necessity therefor, but actual fraud in the exercise from time to time of the authority so obtained. As this case is within the equity jurisdiction of the Circuit Court, as defined by the constitution and laws of the United States, that court may, by its decree, lay hold of the parties and compel them to do what, according to the principles of equity they ought to do, thereby securing and establishing the rights of which the plaintiff is alleged to have been deprived by fraud and collusion." Applying the principles announced in the foregoing decisions it will hereafter be seen in the discussion of this case that it falls within the principles as announced by the court in the foregoing cases.

The next contention is that the plaintiffs never having qualified as executors of Burr Wakeman in this state, could not bring this suit. This position can not be maintained. In *Lewis* v. *McFarland*, 9th Cranch 151, it was said that the principle that "letters testamentary give to the executors no authority to sue for the personal estate of the testator out of the jurisdiction of the power by which these letters are granted," does not extend to a suit for lands devised to an executor. This is not an action for the recovery of personal property. The purpose and object of this action is to set aside the sale of certain lands described in the bills and amended bills, and to vacate the deeds made in pursuance

thereof. The plaintiffs in this action sue under the will of Burr Wakeman, which vested the title to his lands in his executors and trustees. They are therefore devisees and trustees suing for the protection of rights to the realty derived from and under that will, and not in their character as personal representatives, derived from the letters testamentary. By the will, the legal title to the land in controversy was vested in the plaintiffs in this action, and, as I have before said, being citizens of a different state from the defendants in this action, they were entitled to be heard in this court.

The next position insisted upon by the defendants to defeat the plaintiffs' action is, that if the plaintiffs' position is true, that the proceedings were absolutely void under which the lands were sold, that then the plaintiffs have a complete and adequate remedy at law, and this court sitting in equity is without jurisdiction to grant the relief asked for.

It will be observed that the lands in question were sold by virtue of the proceedings in the Boone Circuit Court and passed into the hands of numerous parties each of whom claims under sale made under the order of that court relating to the whole of the land in dispute.

The state court based its proceedings upon steps previously taken upon the forfeiture of these lands as delinquent lands. The lands prior to the alleged forfeiture and sale under the order of the court constituted one body, and were held by one person, Burr Wakeman. If the attempt to forfeit them was not in law a forfeiture that divested his title, or if the proceedings in the Boone Circuit Court were unauthorized and void, then the title as to all the lands remains in Wakeman, and passed under his will to the plaintiffs.

Each defendant's title depends upon the same questions, and those questions all have relation to the proceedings in the Boone Circuit Court and to the attempt to forfeit the lands for non-payment of taxes. It is a case of one person having a right against a number of persons, which may be determined as to all the parties interested by one suit. If the plaintiffs brought ejectment against one of the defendants and succeeded, the judgment would not include the other defendants, although the question in each case would be pre-

cisely the same. But if the plaintiffs can, by one comprehensive suit, have their rights declared and secured, as to all the lands, the possession of which is withheld by the defendants, each claiming a particular parcel, but all basing their claims upon the same proceedings instituted by the officers of the state, may they not invoke the jurisdiction of a court of equity upon the familiar ground that by suing in equity and bringing all the defendants before the court in one action, they can avoid a multiplicity of suits? I think they can.

1. Pomeroy's Eq. Juris. § 245 to 269 inclusive.

The contention that Wakeman, and his executors, since his death, were necessary parties to the proceedings in the Boone circuit court, is not sound. If the steps taken to forfeit the lands in question for the non-payment of taxes, were in accordance with law, then the title passed from the owner to the state. The proceedings which the statute authorized to be instituted in the circuit court for the sale of forfeited land by the school commissioner constituted the mode ordained by the state for selling its own land. As the title of the former owner was gone he had no right to be a party to those proceedings, or to be heard in reference thereto in the court of original jurisdiction or in the supreme court of appeals of the state. His right was simply to redeem within a prescribed time. These principles are decided in *McClure* v. *Maitland,* 24 West Virginia. I am not inclined at this time to question the soundness of the decision of the court in that case, and therefore accept it as embodying a sound construction of the statutes of West Virginia relating to that subject. In the view I take of this case it is unnecessary to pass upon all the questions considered by the court in that case, as the facts in this case differ materially from it.

The next question presented for consideration I hold to be vital, the one upon which, it is apparent, the case rests. It is, whether the sale of these lands was void. The Code of West Virginia provides for the sale of real estate by the sheriff of the county in which the lands, or a greater part of them, lie, for taxes, if it has been returned delinquent for the non-payment of the same. Code of West Virginia, chapter 31, sections 4 to 9 inclusive.

Section 31, chapter 31, of the Code, provides that when

any real estate is offered for sale and no person present bids the amount of taxes, interest and commissions due thereon, the sheriff shall purchase the same on behalf of the state, for the taxes thereon, and the interest on the same, and shall make out a list thereof under a caption provided for in that section, and underneath the caption, "Shall be the several columns provided for in the 10th section with a like caption to each column with one exception." The officer making the list is required to certify it under oath and return the list, with a certificate of his oath attached, to the auditor of the county, now clerk of the county court, within ten days after the sale, who should within twenty days after the return record the same in a well bound book, and transmit the original to the auditor of the state.

It is conceded that the sheriff made a sale, under this statute, of the lands in controversy, and purchased the same on account of the state. But in so doing, it is claimed by the plaintiffs in this action, he failed to comply in several respects with the terms of the statute, and that in consequence of his failure the proceedings were irregular and the deeds founded upon them are null and void.

It will be observed that the heading of the list is prescribed by section 31, and the form of it after the heading is made must conform to the provisions of section 10. This section, amongst other things, requires the officer to return the "Estate held" in the lands sold and purchased by the state, "In what district the land sold was situated; and charged with taxes, and the description of the same." Section 13 requires and prescribes the form of an affidavit to "be appended to the list." Section 31 requires the heading of the list to contain the name of the county in which the land is sold and the month and year in which the sale is made, as well as the year in which the land was sold for the non-payment of taxes. An inspection of the list returned shows that the officer in returning his list had failed to comply with each of the foregoing requirements, thereby showing great irregularity in the proceedings taken by him.

From what I have said it appears that there were no less than seven requirements of the statute which the officer failed to comply with in making his report.

It is claimed, however, that some of the requirements of the 31st section are merely directory, not mandatory upon the officer, and that the irregularities arising from the failure of the officer to comply with these provisions are not essential, and do not vitiate the proceedings.

· In the view I take of this case it is unnecessary at this time to express my assent or dissent to that position. If it was necessary to decide this case, I would pass upon that question, but it is doubtful if I would be able to find any real or supposed reason why one positive requirement of the statute is more important than another. This act of the legislature prescribes the terms upon which realty may be sold for taxes and the owner divested of his title. Should not every positive requirement of it be regarded as material to be strictly complied with, otherwise, may not the officer conducting the sale, to some extent, exercise the functions of a judicial officer, deciding what is necessary to be done to comply with the terms of the statute, instead of a ministerial officer to execute its provisions? There would seem to be but one answer to this question. If he can omit any positive requirement of the statute, he may omit all, and thereby arbitrarily divest any owner of his title to realty in arrears for taxes.

No judicial interposition is required to effect the sale of realty for the non-payment of taxes. It was intended that the statute should execute itself, and it would seem for this reason, if no other, that every requirement should be strictly complied with. Ought we not to infer that the legislature, when it declared in its act that the terms upon which realty might be sold when delinquent for taxes, that it regarded all the requirements of the statute as essential. Otherwise, would it not have omitted to insert any provision that was not regarded by it as material?

If this be the true construction of the statute, it would follow that the failure of the officer to comply with any positive requirement of it, would vitiate the sale made by him, which would be fatal to the title of the defendant acquired through the state. But, as we have said, it is unnecessary to decide this question.

There yet remain two other grounds to be considered upon which complainant seeks relief:

*First :*—It is alleged in the 2nd amended and supplemental bill that the sheriff failed to return his list of lands sold as delinquent for taxes within ten days after the sale and purchase of them by the state.

*Second :*—That the recorder failed to note the time when the sheriff returned his list of sales.

Both allegations are denied by the answer, and the defendants attempt to show that the statute was complied with in both respects.

The evidence upon both points seems to be conflicting, but the weight of it strongly supports the conclusion that neither requirement of the statute was complied with, and the effort of the defendants to overthrow both provisions was clearly the result of an afterthought. The neglect of the officers to comply with either is such an irregularity as tends to prejudice the rights of the owner whose lands have been sold. He had a right to call at the office and demand the production of the officer's report for his examination. If he discovered it was not there within the prescribed time, or being there, had not been filed within the time prescribed by the statute, or that the recorder had failed to note the filing of the same, he could rest upon his rights, feeling assured that the steps taken to sell his realty did not divest him of the title to it. Both provisions of the statute are mandatory, and were held by this Court, in the case of Rich against Latham and others, in 1879, to be so essential that neglect of the officer to comply with either renders invalid the title acquired in pursuance of their action. And this, I think, is now the settled law of this state, as ruled in the case of *Barton's Heirs* v. *Gilchrist,* 19 W. Va. 223. *Simpson* v. *Edmiston,* 23d W. Va. 675. *McCallister* v. *Cottrille,* 24th W. Va. 173.

Before leaving this branch of the case the significant fact should not be overlooked, that the last amended bill charges that the affidavit was not returned within the time required by the statute, to which allegation no answer has been offered or filed, although the absence of such an answer was commented on at the time of the hearing of this cause. I have heretofore spoken of this omission upon the part of the officer as being a positive requirement and one which I hold to be essential.

It is contended, however, by the defendants, that the last amended and supplemental bill setting up this omission of the officer makes an entirely new case inconsistent with the theory of the original and the first and second amended bills, and, in support of this position defendants rely upon *Shields* v. *Barrow*, 7th Howard, 137.

In this position I do not concur, for the reason that that case is entirely different from the one before us. The object of the present suit is to obtain a decree settling the right of the plaintiffs to these lands as against the claim of the defendants based upon certain proceedings taken by the officers of the state, in connection with their forfeiture for the non-payment of taxes. The original bill assails the title of the defendants, derived from those proceedings, as void, and asks a decree declaring the title of the plaintiff to be good as against the defendant. The plaintiff started out with the idea that the proceedings of the Boone Circuit Court were void principally because of their not being made parties thereto. The last amended bill only assigns an additional ground for holding such proceedings, and the sales under them to be void. This proceeding being in a court of equity, under the rules of equity pleading, it does not make a new and different case. *Hardin* v. *Boyd*, 113 U. S., 753 and the authorities there cited.

It follows, from what we have said, that a decree against the defendants, declaring the sales to them by the commissioner, and the proceedings in the Boone Circuit Court, under which the sales were had, to be void as against the plaintiffs, will be passed.