## CHARLESTON.

### CUNNINGHAM *et al. v.* BROWN.

Submitted June 15, 1894.—Decided December 1, 1894.

1. TAX-SALE—TITLE.

    A tract of land was properly entered and assessed for taxation in the name of the owner on the land-books of the county for the year 1882, and the taxes paid. In the year 1883 it was omitted without the fault or knowledge of the owner and placed back as an undistinguished part of a larger tract in the name of the former owner. It was restored to the land-books in the year 1884 in the name of the true legal owner, and all taxes since charged were duly paid, including specifically and by name the years 1884, 1885 and 1886. The larger tract, assessed in the name of the former owner, was returned delinquent for non-payment of the taxes for the year 1883, was sold by the sheriff on the 24th day of November, 1885, under chapter 31 of the Code, and not having been redeemed was conveyed by the clerk of the County Court by deed dated the 11th day of March, 1887, to the purchaser. *Held :* The deed conveyed to the purchaser no title to the small included tract, but, as to it, constitutes a cloud upon his title, which the owner has a right to have removed.

2. TAX-SALE—PRESUMPTION.

    The smaller tract not being returned delinquent in the name of the owner for the year 1883, and there being nothing to rebut the presumption, it is to be presumed under the facts of this case, that the taxes for that year have been paid by the owner.

3. TAX-SALE—ASSESSMENT.

    Where the assessment of a tract of land for taxation is illegal, a sale of such tract of land made by the sheriff for non-payment of the tax so assessed is void.

4. TAX-SALE—ASSESSMENT.

    For there can be no valid sale made by a sheriff of a tract of land as delinquent for the non-payment of taxes, where there·has been no legal assessment of such taxes.

FORTNEY & MONROE for appellant cited Code, c. 29, s. 35 ; Acts 1881 c. 161 ; Acts 1882 c. 161 ; Code, c. 29, s. 8, 84 ; Code, c. 28, s. 13 ; Acts 1882, c. 32, s. 4, 8 ; Code, c. 30, s. 18 ; Code, c. 31, s. 25.

P. J. CROGAN, for appellee :

I.—*Title obtained under tax-deed.*—Code, c. 31, s. 25.

II.—*That there was personalty on land sold for taxes will not defeat tax-title, if no levy was made.*—26 W. Va. 709.

III.—*Owner has a right to pay taxes, even if land not on land-books.*—Code, c. 29, s. 39; Code, c. 31, s. 27; 18 W. Va. 598.

IV.—*A part owner who is not in default as to his taxes, on his separate part, owes no duty to the owner of the other part.*—Cool. Tax. 315; 18 W. Va. 613; 27 W. Va. 58; 16 Mich. 366.

HOLT, JUDGE:

This is a suit in equity, brought in the Circuit Court of Preston county in June, 1891, by Thomas Cunningham and others against James A. Brown, contesting the validity of Brown's purchase of a certain tract of land sold by the sheriff as delinquent for taxes on November 24, 1885, and praying that the tax-deed made to him by the clerk of the County Court on the 11th day of March, 1887, might be set aside as null and void. Evidently the purpose was to have the case finally decided on demurrer without expense. One demurrer being sustained, an amended bill was filed; and, this being also demurred to, a final decree was pronounced on the 1st day of April, 1892, sustaining the demurrer and dismissing the bill. The plaintiff not desiring to further amend, this appeal was taken.

The facts as they appear are as follows: John A. Dille and wife, by deed dated the 16th day of November, 1870, sold and conveyed to John Cunningham, by designated corners and lines, a certain tract of land lying one mile west of the town of Kingwood, not giving the quantity by naming any number of acres, excepting therefrom, however, a certain privilege to mine coal. This deed was admitted to record on the 28th day of November, 1870, but when the land was entered upon the land books for taxation in the name of John Cunningham does not otherwise appear than by the allegation of the bill that it was prior to 1881, and as containing sixty five acres. In the year 1882 the tract in controversy called in these proceedings "twenty acres," but on the land books a tract of thirty four acres, was entered on the land books in the name of Elizabeth

Cunningham, and the taxes for the years 1884 and 1886 paid by her, as appears by tax-tickets filed here as exhibits. John Cunningham, by deed dated July 30, 1881, and admitted to record on the same day, sold and conveyed to Elizabeth Cunningham, then the wife of the plaintiff Thomas Cunningham, and the mother of the infant plaintiffs Thomas Cunningham, Jr., and Annie Elizabeth Cunningham, but now deceased, intestate, a portion off the west side of his farm, on which he then resided, to be bounded on the north, west and south by the lines of the entire tract (of which this is a part) on the east by a line to run parallel with the line on the west side of the said entire tract, and to extend far enough east thereof to include twenty acres. It was entered on the land books in the name of the grantee, Elizabeth Cunningham, for taxation for the year 1882, as containing thirty four acres, and as of the value of one hundred and seventy two dollars and she paid the tax for that year amounting to three dollars and forty six cents and lifted her tax-ticket, which is here filed as an exhibit. On the 28th day of February, 1882, an act was passed to provide for the re-assessment of the value of all the real estate within this state. See acts 1882, c. 32, p. 44. When, in 1882, the commissioner of the first district of Preston county re-assessed the lands of his district, he by mistake or oversight reported the tract for taxation as it originally was in the name of John Cunningham. At that time and before that, the tract of sixty five acres had been further subdivided, John Cunningham having by deed dated April 14, 1882, conveyed thirty two and one half acres thereof to William Cunningham, in which deed he recites having sold theretofore six and three fourths acres of the said Cunningham farm out of the northwest corner to Dr. James H. Manown. After this mistake made by the commissioner of re-assessment the thirty four acre-tract was omitted, and not charged on the land books for the year 1883 in the name of Elizabeth Cunningham, but on the books for that year the whole tract was charged with taxes in the name of John Cunningham, and the tax not being paid by him, the land was returned as delinquent for the non-payment of taxes in his name, as a tract containing sixty five acres, for

the year 1883. Elizabeth Cunningham had made no conveyance or sale of her land to any one. Never by herself or any one acting for her did she authorize said tract of land to be omitted from the land books in her name. She and the plaintiffs were entirely ignorant of what had been done and of those changes made in the land books, but were ready and willing at all times to pay the taxes thereon, whenever the sheriff should present the bill therefor. During all the years 1883 and 1884 there was on the twenty acre-tract sufficient property of the said Elizabeth Cunningham, subject to be distrained, to pay the taxes of 1883, for which the tract of sixty five acres was sold ; and also during the year 1883, Thomas Cunningham, the plaintiff, and John Cunningham each had on the twenty acre-tract abundance of personal property out of which the taxes could have been made; but the sheriff never demanded them or exhibited any tax-bill therefor and made no effort to collect them by distress or otherwise ; and for these reasons the land ought not to have been returned by the sheriff as delinquent, as plaintiffs aver. The lands thus returned delinquent in the name of John Cunningham were in fact not his land, for the same had all been sold and conveyed by him to other persons prior to the year 1883, viz, six and three fourth acres to Dr. Manown, thirty two and a half acres to William Cunningham, and the tract of twenty acres or thirty four acres (the true quantity does not appear) to the decedent, Elizabeth Cunningham, and had been respectively transferred to and charged on the land-books in the names of these three parties before the year 1883. At the time of his purchase at the tax-sale defendant, Brown, was by purchase the owner of all the land sold for taxes except the twenty acres in controversy. The plaintiffs aver that the original tract contained seventy four and a half acres ; that the twenty acres in controversy were not sold and were not intended to be sold at the delinquent sale; that defendant had knowledge of all the facts, and was not a *bona fide* purchaser.

The case must be decided according to the statutes, as they were when the proceedings were had and the tax-sale made, to be found in the Acts of 1882, p. 387, being chap-

ter 130, to amend, and re-enact chapter 31 of the Code, and is now found in chapter 31 of the Code (Ed. 1891) with an amendment of section 1, authorizing a suit in equity in the name of the state to enforce the lien against the land for the taxes assessed. So, also, chapter 105 of the Code (Ed. 1891) has been amended and re-enacted by chapter 24, p. 57, of Acts of 1893, for the sale of lands for the benefit of the school-fund. Both are here noted, but neither one has any bearing on this case, as this was a sale made by the sheriff for delinquent taxes on the 24th day of November, 1885, under the act of 1882 ; and the point here involved arises in the main under the twenty fifth section of that act, which section is the same as section 25 found in the present edition (1891) of the Code.

In the case of *Hays* v. *Heatherly*, 36 W. Va. 613 (15 S. E. Rep. 223) very many of the cases bearing on the general subject of such sales by the sheriff are brought together as a matter of convenience. Since that the case of *Baxter* v. *Wade, supra.* p. 281 (19 S. E. Rep. 404) has been decided, bearing on the subject of such sales and the construction of the statute, but not on the point here involved. See *Poling* v. *Parsons*, 38 W. Va. 80 (18 S. E. Rep. 379); *Wakeman* v. *Thompson*, decided by Judge Jackson of the United States District Court, to be found in a supplement to 32 W. Va. 1 (40 Fed. 375).

Counsel for the appellee claims that under section 25, c. 31, Code, the title of Elizabeth Cunningham to the thirty four acres (20 acres) was vested in James A. Brown in pursuance and by virtue of the sale made of the tract of land of sixty five acres charged on the land books with taxes for the year 1883 returned delinquent for such taxes and sold therefor by the sheriff on the 24th day of November, 1885, at which sale Brown became the purchaser at the price of eleven dollars and eighty two cents; that he had the land surveyed and reported according to law—that it was found to contain seventy four and a half acres by actual survey, and the clerk of the County Court made him a deed therefor, which need not be set out, for it is in the form prescribed by the statute (see section 19, c. 31);—that the thirty four acres of Elizabeth Cunningham was a part

thereof—that it was not charged on the land-books in her name for the year 1883, and she had paid no taxes thereon for that year.

On the other hand it is claimed, that there can be no valid sale, where there has been an illegal assessment—that the assessment for taxation is a part of the proceedings of record, on which the deed is founded, and therefore is an irregularity, which may appear on the face of the proceedings of record in the office of the clerk of the County Court. and was of such a character as would mislead a man of ordinary business capacity, and was of such a character as would be calculated to prevent the owner from redeeming his land—that such gross irregularity thus appears in this case, and that the court should therefore conclusively presume, that the owner was thereby prejudiced, and his rights materially affected (see *McCallister* v. *Cottrill*, 24 W. Va. 173; *Williamson* v. *Russell*, 18 W. Va. 612); and in any event that she had no notice—was not warned in any way —of this *quasi* judicial proceeding against her.

On the questions here involved of illegal, invalid assessment of the thirty four acres under the form and by the description of sixty five acres in the name of John Cunningam, a former owner, and the want of notice or warning of any kind actually or inferentially brought home or fairly to be imputed in any way, of the proceedings against her or her land for delinquency in not paying the taxes for the year 1883, we need not stop to consider the distinguishing mark of land as property and the inherent differences between it as a thing owned and personal property, nor of the peculiar relation, which the state holds to it on account of its indestructibility, and the necessity of its political control absolute as a pre-requisite essential to the very existence of the state, nor of the doctrine of tenure, whether the state has retained or only resumes some ultimate right of ownership. See 2 Bl. Com. (Hammond's Ed.) notes to chapter 2, p. 40. It is enough to say on this head, that every state must for its own existence as such state have a territory of land and be in that sense, as far as necessary, the lord paramount. Here the state takes to herself all the lands, of which any person shall die seised of

an inheritance, intestate and without any known heir ; but it does it by an inquest of the necessary facts, careful of the rights of all, and in its forms and methods of procedure strictly judicial. See Code, c. 69. It exercises the right of eminent domain, but does so only for a special purpose and for a public use and by a judicial proceeding, of which it makes sure the owner shall have notice, and that the land shall not be taken or damaged for any other use or in any other way, or without just compensation. See Const. Art. III, § 9, and Code, c. 42, *etc.*

Taxation in some form is the lifeblood of the state as necessary to political existence as is a place to stand on. The land is always present and can not escape this constant burden. The assessment of land for taxation is judicial in effect, if not in form, and is subject to the general rule, that the proceedings shall not be *ex parte*, nor without due warning to all concerned; and under our constitution the legislature can no more make an assessment, under which property may be taken and sold without notice, than it could render a decree, which might be attended with the same result. No man's property shall be taken without due process of law of some kind, which includes notice in some way. This principle has been embodied in our written constitutions for well nigh seven hundred years (see Great Charter 1215 ; Bill of Rights, Const. 1776, § 8 ; Const. U. S. Amend. Art. V ; Const. W. Va. Art. III, § 10); and so it has been construed by the courts. There must be such a notice, so given as that the owner may have an opportunity to be heard before his land is taken. Here there was no notice of any kind, or in any form, direct or indirect, general or special, actual or constructive. If the sixty five acres had been bought in by the state, and had gone on to the proceeding by the commissioner of school lands, then it would have become a regular, formal, judicial proceeding, an inquest of office against the land itself, in the name of the state, making the former owner or the one, in whose name it was charged on the land-books, and all persons claiming title to or an interest in any such lands parties to the suit. Chapter 105 of the Code, as amended and re-enacted by chapter 24, Acts 1893, p. 57.

The Legislature may declare that land or chattels shall be taxed, and according to what' rate within the constitutional limits, and no power short. of the popular will can reverse the decree; but, if they go further and charge individuals or classes without providing some proper means of ascertaining, whether they are in fact liable, the attempt will contravene the principle that no man, *etc.*, and may be frustrated by the judiciary. 1 Hare, Am. Const. Law, p. 312.

But here also the constitution keeps up the distinction between property real and personal by requiring taxation on all property of every kind in proportion to its value, and that such taxation shall be equal and uniform throughout the state. The legislature must in compliance with the constitution, levy or impose the tax declaring that property both real and personal shall be taxed; but the property subject to the tax and the value thereof must be ascertained by some *quasi* judicial or administrative proceeding directed by law; and the proceeding to enforce payment must also be at least so far judicial as not to deprive the owner of his property without due process of law—a guaranty of our constitution which runs back continuously to the Great Charter. The assessment of land for taxation is judicial in effect and *quasi* judicial in form and is subject to the general rule, which requires notice, some warning adapted to the nature of the proceeding. Where the land has been sold for taxes, bought in by the state and has become irredeemable, the constitution itself requires, that any proceeding against it, based on that supposition, shall be judicial in the proper sense (see Article XIII of the Constitution); and the present statute, made to enforce and carry it into effect, requires an inquest to be made in a regular suit in equity in the name of the state not only against the land itself, but also *inter partes* against all persons claiming title or interest in the lands, who are to be made defendants, and designated and proceeded against by name as far as known. See chapter 105 of Code as amended and re-enacted by Chapter 24, Acts 1893, p. 57. So, also, chapter 31 of the Code, under which the proceeding here complained of was had, says inferentially at least in the first

section, that the sale to be made by the sheriff is to enforce a lien for taxes assessed; ·and, as far as his proceeding is concerned, he is not authorized to proceed against or sell any other land, no matter what the clerk's deed may be supposed to pass. (To be considered further on.) In these proceedings to ascertain delinquency and enforce payment by sale to be made by the sheriff the appropriate notice is required. Notice is of the essence of things required to be done. *Rex* v. *Loxdale*, 1 Burroughs, 447; *Doughty* v. *Hope*, 3 Denio, 597; 1 Blackw. Tax Titles (5th Ed. by Parsons) § 397. And it is a fundamental rule, that in all judicial or *quasi* judicial procedings affecting the rights of the citizen he shall have notice and an opportunity of a hearing before the rendition of any judgment, decree or order against him. In other words he must be warned and have his day in court. So strict is the rule, that, where a proceeding of a judicial nature is authorized, and the statute is silent as to notice, the adjudication will be void, unless notice is given to the party in interest. The common-law, "the just spirit of all laws," and the plainest principles of reason and justice forbid the taking of judicial steps against a person without notice to him and the opportunity to be present and be heard. Therefore a statute will not be interpreted, unless its words be specific, as authorizing judicial proceedings without notice to the party to be affected by them. See Bish. Writ. Laws, § 141, and *Lasere* v. *Rochereau*, 17 Wall. 437, 438, and other cases cited. Hence the statute in question must be construed, as far as it will admit of it, so as not to bring it into conflict with this principle of natural justice embodied in our fundamental law; and so far as it will not admit of such construction it must be held to be qualified and inoperative so far as overridden by such higher law.

In this state our system of granting lands and enforcing the payment of taxes has called into being in unusual numbers adverse claims and conflicting rights to the same land. This fact is recognized in our scheme of taxation, and each *bona fide* claimant is permitted to enter the land for taxation in his own name for the purpose of paying the same; and the payment by his adversary will not inure

to his benefit, and save his land from the effect of delinquency or forfeiture. So each freehold owner or claimant has his claim entered for taxation, whether good or bad, that is as yet undetermined; and it is the lien on such real estate to the extent of his title in the sense of his right and nothing more, that the state proceeds against and sells through the sheriff for delinquency under chapter 31; and all the steps in such proceeding are based on the enforcement of the lien to that extent; and thus regarded and by this method it does not proceed against the land itself regardless of who the true owner may be. Upon this distinction the decision of this case turns, for with an eye to it section 25 of chapter 31 must be interpreted, construed and applied to the facts as they appear in the exercise of all the inherent functions of judicial power, which no statute can dispense with or take away.

With this plain meaning of the law as a whole in view we are not so likely to go astray, for the question is, were the thirty four acres of Elizabeth Cunningham legally assessed as her land on the land books in the year 1883 as an undistinguished part of the sixty five acres charged in the name of her vendor, John Cunningham, and were the taxes for that year on the thirty four acres never properly paid, and had she notice in any fair way that the proceedings had were proceedings against her as owner of the thirty four acres? For unless the thirty four acre-tract was thus legally assessed against her, the conceded freehold owner, there could be, under this proceeding, no lien against her land for the taxes of that year, and, there being none, the sheriff could enforce none by his sale, for it was not the object of this proceeding, as we have seen, to enforce any forfeiture, incipient or complete, resulting from omission, or to give the sheriff power to sell any other title derived from any other source than the one listed and assessed. We may be sure this is so, because the Legislature has no power by this proceeding to transfer her title to the purchaser in any other way. It can not, without some notice or proceeding in the nature of an inquest, declare her land forfeited for omission, non-payment, or for any other cause; and, if it could, it can not in this mode

pass her title to another, for the constitution stands in the way. Article XIII, if not section 10 of Article III. See Black. Tax Titles (2d Ed.) § 105 *et seq.*, and notes ; *Id.* §§ 162, 89, 90 ; *Jones* v. *Dils*, 18 W. Va. 759, 764; *Bradley* v. *Ewart, Id.* 598; 1 Blackw. Tax Titles (5th Ed.) § 397.

Then the question arises: Was her land legally assessed as against her for the year 1883 as a part of the sixty five acres charged in the name of John Cunningham ? We can not say that the assessment against John Cunningham was to all intents and for all purposes illegal, for he may in some way and for some cause—even a good and valid one —have claimed it adversely to his vendee, and, if so, and the other requirements were complied with, it was proper, and he had the right to put it on in his own name. But if this is the way it came on the books, then for the reasons already given the Legislature did not intend that her adverse title to the thirty four acres should pass by the sheriff's sale and clerk's tax-deed under any circumstances, for the plain reason in her case that the state did not have it to confer upon another, and, if it had it by forfeiture, it could not be passed to another in that way as against any private right. Nor is such the meaning of the statute properly interpreted and construed. If the land was put on the books in the name of John Cunningham as in privity with or in any way representing the ownership of Elizabeth Cunningham, the vendee, then it was illegally and improperly entered and assessed as to her in that name and in that form without her knowledge or fault in any way, as affirmatively appears by the records of the clerk's office, including the proceedings here complained of; an illegality worse than a mere irregularity— something that would mislead her to her prejudice and mislead any man of ordinary business capacity, not only as to what portion of her real estate was sold or for what year or years or the name of the purchaser, but in a transaction thus obscured conceal from her effectually the fact that her thirty four acres had been sold at all for any year or to any person, and of course calculated to prevent her from redeeming her land. See *McCallister* v. *Cottrille*, 24 W. Va. 173. Therefore I do not regard this as the irregularity mentioned in the statute, but as an illegal assess-

ment made without her knowledge or consent in another name and with a different description (for the'quantity in this case was the best and only distinctive item of description.) Therefore no lien and no valid sale but an invalid one made without assessment without notice or any other step to give the administrative officers of the law jurisdiction in a proceeding with nothing to stand on but the naked statute to that extent everywhere strictly construed, and every material requirement held to be indispensable to the validity of the sale. The statute, properly read in connection with all other laws on the same subject, does not require—would not tolerate—a judgment so unnecessarily harsh.

But when we come to look at the facts the state had this tract of thirty four acres on its land-books charged in the name of the owner; was dealing with it all the time as a subject of taxation, with which Elizabeth Cunningham was in her own name assessed; and the taxes were paid—all paid, as far as we can tell; presumptively paid—for it was never returned delinquent in her name. *Lewis* v. *Disher*, 25 Wis. 441. It was the duty of the law-officers, both assessor and clerk, to make out the proper assessment against her for the omitted year 1883 with its interest as well as the years 1882, 1884, 1885 and 1886, and she paid all that was charged against her. See *Gould* v. *Sullivan* (54 N. W. Rep. 1013—20 L. R. A. 487 and notes); *Lumber Co.* v. *Wells*, 157 Pa. St. 5 (27 Atl. 408). And whether she paid it or not, the state was in 1884 dealing with her and with her land as a tract, which had been improperly dropped from the land-books in her name in the year 1883, restored. it at the earliest opportunity, viz. 1884, and the tax for 1883, if in fact not paid by being charged in the lost tax ticket of 1885, or accounted for by the sheriff as extended on his book but not made out by him in the ticket for 1884, is still dealing with her or her estate in regard to it, whether successfully or unsuccessfully it does not concern us to inquire.

As to the duty of clerk and assessor in regard to the taxes for the year 1883, see Code, c. 29, s. 9, 10; and *Id.* c. 31, s. 51. There was nothing to put her on inquiry, to make it her duty to inquire into the fact of assessment against a

tract of sixty five acres charged in the name of John Cunningham, or to pay such taxes, or to inquire into or take notice of any *quasi* judicial proceeding against the sixty five acre-tract for the non-payment of such taxes and the enforcement by the sheriff's sale. The officers of the law have duties to perform as well as the owner. It was their fault that the tract of thirty four acres was omitted from the land-books in the year 1883, and this the owner had corrected at the first opportunity thereafter. It was the duty of both the clerk and assessor to charge the land with the tax for the omitted year 1883 with its interest. Such was the officers' duty, and the owner had a right to suppose that it had been done. She paid all that was demanded of her, all that stood charged against her land. Two such mistakes on the part of the officers of the law, with which the purchaser had nothing to do but which were made without her fault, would of themselves be sufficient to set aside the sale for the taxes of 1883; for, if not corrected so as to prevent the loss of her land, they would be carrying with them all the consequences of a fraudulent misrepresentation, which a court of equity would not permit. See *Slater* v. *Maxwell*, 6 Wall. 268, 277, citing *Dudley* v. *Little*, 2 Ham. 504; *Yancey* v. *Hopkins*, 1 Mumf. 419; *Rowland* v. *Doty*, Har. (Mich.) 3; *Bacon* v. *Conn*, 1 Smedes & M. Ch'y 348; *Lefferts* v. *Board*, 21 Wis. 688; *Gould* v. *Sullivan*, 84 Wis. 659 (36 Am. R. 955) (L. R. A. 487); Black. Tax Titles, § 162; Cooley, Tax'n, p. 367; *Lumber Co.* v. *Wells*, 157 Pa. St. 5 (27 Atl. 408).

Again, if this mistake was made by the commissioner of re-assessment, acting under chapter 32 of Acts of 1882 (see Acts, p. 44) then no doubt he made it because the language of these deeds from John Cunningham led him to believe, that the respective grantees did not thereby take and hold their parts in severalty within the meaning of the law, which then authorized several assessments; so he for that reason put it back on the land-book as an undivided tract of sixty five acres in the name of John Cunningham, the common grantor. If that view be taken, then to avoid injustice Elizabeth Cunningham and appellant must be regarded for that occasion and brought about in that manner

as co-owners with the duty of each to pay, if such was the duty of either; and if in the circumstances it was not her duty to pay on her thirty four acres in that name, then the sale could in no wise affect her; if it was her duty, then we may also regard it as the duty of her *quasi* co-owner, and he could not buy to her injury. See *Battin* v. *Woods*, 27 W.. Va. 58; Cooley, Tax'n, 345; 2 Desty, Tax'n, 936; Black. Tax Titles, 206, 282; 25 Am. &. Eng. Ency. 706; *Blake* v. *Howe*, 15 Am. D. 681; 1 Aik. 306; *Brundred* v. *Eghart*, 158 Pa. St. 552 (28 Atl. 142).

If the tract of sixty five acres was entered on the land-book in the name of John Cunningham as an adverse claim —but I do not regard that as a correct view—then the thirty four. acre-tract was not proceeded against and not sold, and the pending *quasi* judicial proceeding did not affect her, the adverse claimant. If her thirty four acres was thus entered as a part of the sixty five acres because not sufficiently severed to be separately assessed—nor do I think this the correct view—then the co-owner could not buy to the prejudice of her rights. If, however, it was done by the fault of the commissioner of re-assessment without the knowledge or fault of Elizabeth Cunningham, which is the case as made by the bill and accepted as true by the demurrer, then there was against her no legal assessment of her tract of thirty four acres for the year 1883, and therefore no lien; nor was there any notice or warning to her, such as the statute requires, of the sale and proceedings, on which the sale was based, and it is not the purpose of the statute properly construed to dispense with such elemental requirements, or to impart to the deed of the clerk the efficacy to pass her title to the purchaser without them; for the state had nothing to give, and, if it had anything as the result of omission from the land-books, it could not transfer it in that way to the prejudice of any private right.

For the reasons already given, it is seen we do not regard this as a case necessarily involving the right to redeem and therefore do not consider it necessary to discuss the sufficiency in amount and legality of the mode of the tender of fifteen dollars alleged in the bill.

76

We are of opinion that the title of Mrs. Elizabeth Cunningham to the tract of thirty four acres or twenty acres, which ever the true quantity.may be, did not pass to the purchaser by virtue of the tax-sale and tax-deed complained of, but that the tax-deed constitutes a cloud upon the title of the plaintiffs as her heirs, which they have a right to have removed.

The decree complained of is reversed, the demurrer over-ruled, and the cause remanded for a rule to answer and further proceedings.