ULMAN v. IAEGER et al.

(Circuit Court, D. West Virginia. May 17, 1895.)

1. EQUITY PLEADING—DEMURRER—EXHIBITS.
   Upon demurrer to a bill, the exhibits filed with the bill are to be read as part of it, and the statements found in them must be accepted as true against the demurrants.

2. EQUITY JURISDICTION—BILL TO CANCEL TAX DEEDS—MULTIPLICITY OF SUITS.
   A bill by a landowner to cancel numerous tax deeds, held by different persons under a sale made by the commissioner of school lands, in West Virginia, in one proceeding to forfeit the lands for taxes, may be maintained as a bill to remove cloud from title, and on the ground of avoiding a multiplicity of suits, where all the parties claim under a common source of title.

3. SAME—TAX SALES—SCHOOL LANDS.
   Where lands are forfeited for nonpayment of taxes in West Virginia, and are sold by the commissioner of school lands, the title acquired by virtue of the tax deeds is the same title as that of the original owner, and he is to be regarded as the common source of title, notwithstanding that the same has passed through the state to the purchasers at the tax sale.

4. LACHES—DEMURRER TO BILL.
   The question of laches cannot be considered upon demurrer to the bill where the bill alleges that complainant was ignorant of the matters constituting the foundation of his right, and that, as soon as he discovered them, he took the necessary steps to assert his right.

5. EQUITY PLEADING—MULTIFARIOUSNESS—JOINDER OF PARTIES.
   In a bill and cross bill for partition between tenants in common of a tract of land, it is proper to join as defendants numerous purchasers at a tax sale of part of the land, for the purpose of canceling their deeds, on the ground that the tax proceedings were invalid; and such bills are not rendered multifarious by such joinder.

6. SAME—DISCRETION OF COURT.
   Whether or not a bill is multifarious is a question which rests largely in the discretion of the court, and a decision overruling an objection based on that ground will not be reviewed on appeal.

Okey Johnson and Couch, Flournoy & Price, for A. J. Ulman.

Jas. H. Ferguson and P. W. Strother, for W. G. W. Iaeger.

John S. Wise, W. E. Chilton, and E. Spencer Miller, for trustees.

Brown, Jackson & Knight, A. C. Snyder, T. S. Heintze, and D. E. Johnston, for Bramwell and others.

Payne & Green, for Dwight Devine.

Watts & Ashby, for David E. Johnston and Stealeys.

Before GOFF, Circuit Judge, and JACKSON, District Judge.

JACKSON, District Judge. Alfred J. Ulman filed his bill in the circuit court of McDowell county, W. Va., against W. R. Iaeger, W. G. W. Iaeger, and others, claiming that he was a cotenant of W. R.

Iaeger in a tract of 150,000 acres of land lying in said county, having acquired title to one undivided half interest. The bill alleges that certain proceedings were instituted by the commissioner of school lands in McDowell county to forfeit the land for the nonpayment of taxes, which finally resulted in the sale of over 7,000 acres of the same to sundry third parties, which sales were confirmed by the court, and deeds were made by the commissioner to the various purchasers in pursuance of the order of the court confirming the sale. The primary object of the bill is to annul and vacate the deeds made by the commissioner, and thereby to remove the cloud upon the title of the owners to the land sold. The further object of the bill is a partition of the land between the tenants in common. There are other grounds of relief sought which at this time we do not think require attention. After the filing of the original bill, the case was, by proper proceedings, removed into this court, for further proceedings to be had therein.

It appears from the bill that Ulman conveyed to Kent, Neal, and Totten one undivided fifth part of his one-fourth of the land in controversy first acquired by him, and that on the 8th day of February, 1888, W. R. Iaeger conveyed the equity of redemption in three-fourths to his father, W. G. W. Iaeger; and it further appears that on the 24th day of April, 1888, W. G. W. Iaeger conveyed the land to Henry Parmalee, trustee, to secure $6,000 to C. B. Wilkins, and that on the 26th day of March, 1889, he conveyed the same land to John P. Jenny, trustee, to secure $60,000 to Charles C. Hanes. The bill prays for an account between the plaintiff and defendant W. G. W. Iaeger as to the amounts advanced for taxes, and other moneys advanced for the protection of the land, and calls for a discovery as to the amounts due on each of said trust deeds, and asks that said trust deeds be set aside as clouds upon the plaintiff's title, claiming that they were "shams." To this bill W. G. W. Iaeger filed his answer, denying many of the allegations of the bill, and admitting others, which are unnecessary to be considered at this time. After the filing of the answer, the plaintiff filed an amended bill, making Elias Adler a party, alleging that W. G. W. Iaeger had conveyed one-fourth of his interest in the land to Adler, which was in fact a conveyance for the benefit of Ulman, who, it is alleged, had furnished the purchase money, by which transaction Ulman claims he acquired that interest which Adler and wife conveyed to him on the 30th day of July, 1889, making Ulman's interest one-half of the land. The amended bill also makes a number of the purchasers at the tax sale parties defendant who were not before made parties. On the 2d day of June, 1890, after the issues were made up between Ulman and Iaeger, the defendant W. G. W. Iaeger filed his cross bill, which filing was before that of the first amended bill, against the parties brought into the case by the cross bill. It further appears that Ulman, in his original and amended original bills, seeks relief against the Iaegers and all the defendants who set up any title to the land in controversy, and calls for a partition of the lands between him and W. G. W. Iaeger. This is the scope of the original bills, while the cross bill of Iaeger seeks af-

firmative relief from Ulman, setting up the issues made in his answer to the original bill of Ulman, and bringing to the attention of the court sundry new parties, who, it is alleged, were necessary parties to this proceeding, all of whom were purchasers of a portion of this tract of land at the commissioner's sale, thus rendering it necessary to pass upon the validity of their deeds, claiming that they were clouds upon the title of the rightful owner of the land sold by the commissioner. Other matters are presented for the consideration of the court in both the original and cross bills, which we do not think necessary to consider upon the demurrer; but they are all more or less directly connected with the title to this land, and grew out of the same original controversy between Ulman and Iaeger, on the one hand, and the defendants, on the other. In fact, all the parties to this suit claim portions of the original tract of land now in controversy, and derive their titles from the same common source. Upon this state of facts, as they appear in the original and cross bills, the several defendants have filed their demurrers, and invoke the judgment of the court upon the questions of law raised by them, which are substantially the same.

The first ground assigned is that both Ulman and Iaeger have plain adequate remedies at law, and that all the purchasers at the tax sale hold adversely to them, which requires an action at law to dispossess them. This ground of demurrer is not an unusual one in cases of the character we have under consideration. In passing upon the questions raised by the demurrers, the exhibits filed with the bill are to be read as part of it, and the statements found in them must be accepted as true against the demurrants. In this connection it seems to us that some of the questions raised by the demurrers should be considered upon the merits, rather than upon demurrer to the bill. We will dispose of the question as to the remedy of the plaintiff in this action hereafter, as we wish to first notice the question of misjoinder of parties.

It is urged that all of the defendants who were purchasers at the tax sale have been improperly impleaded in this action because there exists no privity of interest between them and Ulman and Iaeger, and, as a consequence, no such privity between the parties as would entitle Ulman or Iaeger, or both of them, to maintain this action. This is the most serious question raised by the demurrers. To enable us to discuss this position, we have reviewed briefly the history of this case. From that history it is apparent that the title to the land in controversy was either in Ulman or Iaeger, or in both, as tenants in common, and that in this proceeding they must be recognized as the source, and the only one, from which all of the defendants who are impleaded in this action derived their title, if any they have, to any of the land in controversy. It is true that the purchasers at the commissioner's sale claim that they are holding under the state; but it cannot be denied that the state only got the title of Ulmer and Iaeger, if any she acquired, and, when she sold it, she only sold and conveyed the title of Ulman and Iaeger as purchased at the sale. De Forrest v. Thompson, 40 Fed. 375, and reported as Wakeman v. Thomp-

son in 32 W. Va. Append. 1. We hold this position to be sound, and, as a consequence, there is a privity of estate between the plaintiffs in the original and cross bills and all of the defendants who were purchasers at the tax sale, and it must follow that as to them there was no misjoinder of parties to the action. But we do not rest this conclusion alone upon this position, for the reason that if, in the disposition of the case, it should turn out that the proceedings taken by the school commissioner on behalf of the state were irregular, and either void or voidable, the land would be, by such legal action, restored to the former owners in whose name or names it was sold. This result would establish a legal relation between the plaintiff and defendants, and, as a consequence of such relation, a privity of interest that justified the plaintiff impleading the defendants in this action. One decree could be entered in the case vacating all the deeds made under the proceedings had in the McDowell court, for the plain reason that, if the action of that court was irregular, and did not comply with the terms of the statute under which the proceedings were had, then the defendants acquired no title to the land as against the plaintiffs. We have before held that, where the claims of the defendants are derived from the same source, a suit in equity is the proper proceeding in which to litigate their rights, upon the familiar ground that by suing in equity you can bring all the defendants before the court in one action, and thereby avoid a multiplicity of suits.

There is no occasion. as is contended, for different and several actions to recover the possession of the land in controversy until the cloud which now hangs over the title of complainant is removed. In this case it is alleged that there is a common wrong against the rightful owners of this land, insisted upon by all of the defendants who were purchasers of the land at the tax sale. That common wrong involves the title of all of the numerous purchasers of the lands in controversy. As an incipient step in the litigation, it becomes necessary to vacate and annul the deeds of these various purchasers, founded, as it is alleged, upon proceedings that were not only irregular in not complying with the statute, but were absolutely void, by reason of the fact of an alleged interest in them of the judge of the court who presided at the time they were had. It is doubtful if the last allegation just referred to would be properly cognizable on the law side of the court, under the peculiar circumstances of this case. Be that as it may, it is a very grave charge, and we think more properly belongs to a court of equity, and should be heard in that forum. If we hold that actions of law should be brought for the recovery of the lands sold at the tax sale, it would involve the bringing of suits against each one of the defendants; or, if they were all impleaded in one action of ejectment, each one could demand a separate trial, which would occasion unusual delay, and greatly increase the cost of litigation. The purpose and object of this suit in impleading so many in one action is to prevent oppressive and vexatious litigation, which is not only unnecessary, but is often unavailing, as it might prove to be in this case.

Upon the demurrers the rights to all the parties to the tax sale would depend upon the same questions of law. In this connection it is insisted that there is no privity of interest, by contract or otherwise, between the demurrants and Ulman and Iaegers, except that which the law implies, which, under the circumstances of this case, we hold creates such a privity of interest as justifies this action. We therefore conclude that, if there is a remedy at law, this is one of those cases in which there is also a coexistent remedy in equity, and that the action may be maintained in either forum, but that a more adequate remedy would be found in equity—First, because it is the proper forum in which to raise the question of a cloud upon the title, and to obtain relief by a decree of the court removing the same; and, second, because the object is to vacate and annul deeds that might be used in the chain of title in an action of law.

It is claimed that the questions raised by the bills have been passed upon by the circuit court of McDowell county in proceedings therein had between the state of West Virginia and Ulman and Iaeger. It does not so appear from the bill. On the contrary, it clearly appears that the legal title to the lands in question never arose between the state and Ulman and Iaeger. The action taken and had in the state court was not of a judicial character in which the strength of title was at issue and tried between the state and Ulman and Iaeger. The proceeding was purely a statutory one, of a remedial character, upon which the court undertook to administer relief by which the state could secure taxes due it against lands conceded by the proceedings to have formerly been owned by Ulman and Iaeger. The whole proceeding was purely administrative, and did not involve the validity of the title of Ulman and Iaeger. For this reason we cannot sustain this position.

In the discussion of the questions raised by the demurrer, the defendants claimed that the plaintiff had waited too long before bringing his suit, and that the doctrine of laches applied. No such cause is assigned in any of the demurrers filed that have come under our notice. Treating it, however, as a cause assigned, it seems to us that, under the allegations of the bills, it is a question that more properly arises upon the final hearing of the case on its merits, and for this reason we are not inclined at this time to enter into a serious discussion of it, which may receive a careful consideration both of the facts and the law as applicable to them. The bills allege that both Ulman and Iaeger were ignorant of their rights, and they particularly specify and charge that they were ignorant of the failure of both the sheriff of McDowell county and the clerk of the county court of the county to perform the duties required of them by the statute in regard to the tract of land in question. And the bill further charges that, as soon as they became aware of their legal rights, they took the necessary steps to assert them. Upon the pleadings as they now stand, we must accept these statements as true, leaving the question of laches to be finally determined upon the proofs and the law applicable to the evidence.

We have thus far considered what we regard as the more, if not

the most, important questions raised by the demurrer. A purely technical question remains to be disposed of, and one which in no way involves the real merits of the controversy; and that is that the bill and amended bills, as well as the cross bill, are multifarious, which simply means that the bills are made up of many different parts, affecting different interests. It is a general principle in equity that two or more distinct subjects cannot be embraced in the same suit, and that the joining together improperly in one bill of complaint distinct and independent matters of litigation falls within this rule. In this case all the parties to the suit are interested, in one form or another, in the same subject-matter of controversy, but it is claimed the interests of the defendants are so conflicting that the grouping of them together becomes a vice that a court of equity will not tolerate. It is manifest that, if the purchasers at the tax sale can defeat the plaintiff in this action, then all questions of dispute are settled by a simple decree dismissing the bills; but, if they cannot affect a recovery, then a decree annulling and canceling these deeds under which they claim title settles the primary and chief litigation in this cause, and leaves the minor matters to be disposed of which in no way concerns them.

It is strongly urged that one of the objects of the original bill is to secure a partition of the lands between the tenants in which the defendants who purchased the lands at the tax sale have no interest. This is true, but that question is one that cannot properly arise until the court can determine what land the complainant holds as against the defendant tax purchasers. If the purchasers at the tax sale can defeat the plaintiff in this action, then there may be no need of partition; but, if the deeds of the purchasers should be declared to be inoperative and void, then it is a matter of no moment to them whether the lands in controversy belong to one or both of the plaintiffs in this action. Before partition could be made, it would be necessary to ascertain how and by whom the lands are held; and, inasmuch as the defendant purchasers at the tax sale are claiming the land (against both Ulman and Iaeger) sought to be partitioned, it would seem best to determine the rights of all parties claiming either the legal or equitable title to this land in one comprehensive suit, instead of numerous actions, as all the matters in dispute relate to the same subject-matter of controversy, which have a common origin, and are not so separate and independent as to make this bill objectionable for misjoinder of parties, and therefore multifarious. It cannot be said that the causes of action in the case under consideration have no connection or common origin. It is to be remembered that whether or not a bill is multifarious is a question that rests largely in the discretion of the court, and that a decision overruling a technical objection of this character would not be reviewed upon an appeal. This position is well supported by authority, for which is cited 1 Beach, Eq. Prac. § 115, and the numerous cases cited in note 7. In that note it is said "that in no case has the supreme court of the United States reversed a decree on account of multifariousness in the bill."

Can we say that, upon the consideration of the entire bill, the

vice of misjoinder is so apparent and manifest that we should sustain the demurrers filed to the bill? We think not. We are therefore of the opinion that the demurrers should be overruled, and it is so ordered.

**GOFF, J., concurs.**