THE HOUSING AUTHORITY OF THE CITY

OF BLUEFIELD, WEST VIRGINIA, *a*

*public corporation*

*v.*

E. T. BOGGESS, ARCHITECT, INC.,

*a corporation, doing business*

*as* E. T. BOGGESS, AIA, ARCHITECT,

INC., AND E. T. BOGGESS, ARCHITECT,

INC., *a corporation*

(No. 13661)

Decided April 5, 1977.

*Fred O. Blue*, for Bluefield Housing Authority.

*Rex E. Lee*, Assistant Attorney General, *John A. Field, III*, U. S. Attorney, *Stuart E. Schiffer and Kevin R. McCarthy, Dept. of Justice*, for Secretary of Housing and Urban Development, intervenor-appellant.

*Steptoe & Johnson, Edward W. Eardley*, for appellee.

HARSHBARGER, JUSTICE:

This is an appeal from a dismissal order by the Circuit Court of Mercer County.

On March 26, 1964, the Housing Authority of the City of Bluefield, Mercer County, West Virginia entered into an Annual Contributions Contract with the Department of Housing and Urban Development, pursuant to the United States Housing Act of 1937, 42 U.S.C.A. § 1437 *et seq.*, to provide for development and operation of two low rent housing projects.

On November 16, 1970, the Housing Authority contracted with the appellee, E. T. Boggess, an architect, to

design the project and to supervise and inspect its construction. Problems arose during construction prompting HUD's suggestion in April or May of 1972 that the Authority dismiss Boggess. It declined to do so at that time because it did not believe that the suggested grounds for dismissal had been substantiated.

In subsequent correspondence, HUD wrote to the Authority questioning the competency of Boggess' performance and concluding that the Authority should immediately cancel the architect's contract. Boggess resigned December 22, 1972.

On July 19, 1974, the Authority filed a complaint against Boggess alleging negligence, fraud, breach of implied warranties, and breach of express warranties. Boggess moved to dismiss the complaint alleging that the Authority was not the proper party plaintiff because HUD was the real party in interest to the contract between the Authority and Boggess and because HUD was an indispensable party. An evidentiary hearing was held on October 28, 1974, for the purpose of determining the extent to which HUD exercised control over the Authority.

The very eminent trial court entered an order February 18, 1975, finding as fact that "complete relief cannot be accorded between the plaintiff and the defendant in this lawsuit in the absence of HUD being made a party hereto ... [and] that HUD's nonjoinder is so prejudicial both to its rights and to those of the parties already joined, that the action cannot continue without HUD." The court ordered dismissal unless HUD came in within thirty days, finding HUD the real party in interest and an indispensable party; and with the passage of thirty days from February 18, HUD having not entered the suit, the dismissal was effective.

The appeal to this Court was granted November 17, 1975. On November 13, 1975, however, the Authority assigned to HUD all of its rights, title, interests, and remedies in the contract between the Authority and Boggess. Subsequently, on December 12, 1975, HUD moved this

Court to intervene in the suit, grounding its motion on its new status as assignee. We granted that motion.

We are called upon to examine the trial court's findings that HUD was the real party in interest under Rule 17(a), W.Va. R.C.P., and a Rule 19, W.Va. R.C.P. indispensable party whose absence necessitated dismissal under Rule 12(b)(7), W.Va. R.C.P.

Rule 17(a), W.Va. R.C.P. provides:

> 'Real party in interest.—Every action shall be prosecuted in the name of the real party in interest; but an executor, administrator, guardian, trustee of an express trust, or any other fiduciary, or a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by law may sue in his own name without joining with him in the party for whose benefit the action is brought...."

There is often confusion about the office of Rule 17. As Judge Craven wrote in *Virginia Electric & Power Co. v. Westinghouse Electric Corp.*, 485 F.2d 78, 83 (4th Cir. 1973), *cert. denied*, 415 U.S. 935 (1974), although federal Rule 17 "Intended to expand the class of those who may sue to include persons having an equitable or beneficial interest, the rule is unfortunately susceptible to efforts to prevent prosecution of claims...."

The efforts usually involve defense protestations, as here, that the suing plaintiff has no substantive rights against the defendant and therefore is not the real party in interest. Sometimes defendants attempt to paint a real party in interest picture by showing that defendant has defenses against the absentee or that defendant may have to withstand another lawsuit by the absent party.

We believe the Authority has substantive law rights to sue Boggess.

The contract upon which Boggess was sued was entered into between Boggess and the Authority. HUD was not a party to it although under the terms of HUD's

agreement with the Authority HUD exercised considerable supervision over the construction of the project as well as over Boggess' performance under his contract with the Authority. HUD also furnished all the project funds.

The thrust of defendant's position in the trial court and the theory upon which he prevailed in persuading the court to grant the motion to dismiss was that although there was no contractual privity between HUD and Boggess, HUD's control over and participation in the Bluefield project was so pervasive as to make HUD the only real party in interest to enforce all rights and claims arising under the Bluefield-Boggess contract.

> "The broad question presented ... is whether the United States, by structuring the transactions through which it builds low income housing so as to avoid formal contractual privity with third parties, has thus permanently extricated itself from responsibility for its project in spite of its total control over it and total financing of it. Will this Court allow the superficial and unilaterally contrived contractual form of this project to supercede and control the real substance of what has occurred?"

Brief for defendant at 13.

An examination of the Annual Contributions Contract shows that the Authority has considerable rights and obligations. Among the Authority's responsibilities is the duty to prosecute diligently the completion of the project; to comply with federal anti-discrimination law; to acquire project sites; to maintain appropriate records; to relocate people displaced by the projects; to maintain the project in good order, repair and condition; to enforce all its contract rights under contracts with third parties; and to administer the project after completion.

This brief survey of the Annual Contributions Contract is offered simply to support our belief that the scope of obligations and duties created by it contemplates very real local input from the planning stage

through construction and continuing to its ultimate completion and operation. We note the special emphasis placed on the Authority's duty to pursue, prosecute and enforce its contractual rights against third parties.

42 U.S.C.A. § 1437 states, in relevant part:

"It is the policy of the United States ... to assist the several States and their political subdivisions to remedy the unsafe and unsanitary housing conditions and the acute shortage of decent, safe, and sanitary dwellings for families of low income and, consistent with the objectives of this chapter, to vest in local public housing agencies the maximum amount of responsibility in the administration of their housing programs...."

In addition to our own judgment about the contract, we have abundant authority for the principle that local housing authorities are viable legal entities for the purpose of suing and being sued.

In *Thorpe v. Housing Authority of the City of Durham*, 393 U.S. 268, 89 S. Ct. 518 21 L. Ed. 2d 474, (1969), the Court upheld a HUD directive which was attacked by the Housing Authority as limiting Congress' express policy of "vest[ing] in the local public housing agencies the maximum amount of responsibility in the administration of the low-rent housing program". HUD's capacity to make the directive and the directive's validity were sustained. The Court proceeded on the implicit premise that the Housing Authority was endowed with characteristics rendering it something considerably greater than a mere conduit in effecting HUD's goals. *See, also Housing Authority of the City of Omaha v. United States Housing Authority*, 468 F.2d 1 (8th Cir. 1972), *cert. denied* 410 U.S. 927 (1973).

Frequently contracts are drafted pursuant to standards and regulations required by the United States and subject to approval by the United States. The elements of federal financing, supervision and control are not sufficient to strip the contracting parties of their rights

and obligations under their contracts. These elements do not relegate local authorities to mere "agents" of the United States nor transform local projects into federal projects. *See Mason-Rust v. Laborer's Local 42*, 435 F.2d 939 (8th Cir. 1970); *U.S. ex rel. Miller v. Mattingly Bridge Co.*, 344 F. Supp. 459 (W.D.Ky. 1972); *U.S. ex rel. Hutto Concrete Co. v. Magna Building Corp.*, 305 F. Supp. 1244 (D.Ga. 1969); *U.S. ex rel. Nobles Insulation Co. v. Magna Building Corp.*, 305 F. Supp. 1246 (S.D. Ga. 1969); *D. R. Smalley & Sons, Inc. v. United States*, 372 F.2d 505 (Ct. Cl. 1967), *cert. denied*, 389 U.S. 835 (1967).

By synthesizing the analagous elements of the cases cited and applying them here, we find that the relationship between HUD and the Bluefield Housing Authority is not unique. It does not constitute an attempt by the federal government to construct a contractual labyrinth to effect wholly national goals using local "straw parties".

Defendant seems to advance the proposition that there can be only one real party in interest: That if HUD is not declared to be *the* real party in interest Boggess may have to face another suit.

*Virginia Electric & Power, supra,* teaches that some courts have held Rule 17 to be a vehicle to insure that a defendant can present defenses he has against "the real party in interest, to protect the defendant against a subsequent action by the party actually entitled to relief, and to ensure that the judgment will have proper *res judicata* effect." 485 F.2d at 84. *See also*, the Committee Note of 1966 to Amended Rule 17(a), 3A Moore's Federal Practice ¶ 17.01[8] (2nd ed. 1974).

But our examination of the cases reveals scant authority for the notion that Rule 17 should protect the defendant from a potential multiplicity of suits, allow him to assert his defenses, or insure proper *res judicata* effect. *See United States v. Aetna Casualty & Surety Co.*, 338 U.S. 366, 70 S. Ct. 207 94 L. Ed. 171, (1949); *Dubuque Stone Products Co. v. Fred L. Gray Co.*, 356 F.2d 718 (8th Cir. 1966); *Celanese Corp. of America v. John Clark In-*

*dustries*, 214 F.2d 551 (5th Cir. 1954); *United States v. Tyler*, 220 F. Supp. 386 (N.D.Iowa 1963); *Rackley v. Board of Trustees of Orangeburg Regional Hospital*, 35 F.R.D. 516 (E.D.S.C. 1964); and *Sigma Engineering Service, Inc. v. Halm Instrument Co.*, 33 F.R.D. 129 (E.D.N.Y. 1963).

A defendant is not entitled just to be sued once; "Under the second sentence of Rule 17(a), a party to a contract for the benefit of another person may sue in his own name. However, if the applicable substantive law gives the third-party beneficiary an enforceable right, he also will be a real party in interest and may bring an action on the contract on his own." Wright & Miller, Federal Practice and Procedure: Civil § 1543.

In *United States v. Aetna, supra*, the question was whether an insurer who had paid a claim in whole or part, was a real party in interest. Applying Rule 17, the United States Supreme Court said, "If the subrogee has paid an entire loss suffered by the insured, it is the only real party in interest. . . . If it has paid only part of the loss, both the insured and insurer (and other insurers, if any, who have also paid portions of the loss) have substantive rights against the tortfeasor which qualify them as real parties in interest." 338 U.S. at 381.

We find that Rule 17 has, properly, no function of protecting defendants from claims by other real parties in interest. We think Rule 17 would be more clearly perceived if it read, "every action shall be prosecuted in the name of a real party in interest." It is not our understanding that it is a plaintiff's responsibility, under pain of dismissal, to bring in everyone who might have a substantive law right to sue the defendant upon the transaction plaintiff complains about. It is sufficient Rule 17 compliance if plaintiff has the right to sue, even though he has not *all* the substantive law rights. Rule 17 should not be used to do Rule 19 work.

It is well settled law in this state that a party with whom a contract is made has a vested legal interest conferring the right to sue for its enforcement. 4B M.J.,

*Contracts,* § 80. We hold that the Bluefield Housing Authority has a real and justicable interest in its contract with Boggess and would allow it to assert its claim. To hold otherwise would bring us to the dubious result of leaving local housing authorities without remedy to enforce their contracts.

We are solicitous of the defendant's assertion that a determination of the action against him absent HUD *could* subject him to further liability from claims by HUD, and that HUD's absence *could* impede his ability to defend against the Housing Authority's allegations, and that therefore HUD was an indispensable Rule 19 party. Rule 19, W.Va. R.C.P. states:

> "(a) *Necessary joinder.*—Subject to the provisions of Rule 23 and of subdivision (b) of this rule, persons having a joint interest shall be made parties and be joined on the same side as plaintiffs or defendants. When a person who should join as a plaintiff refuses to do so, he may be made a defendant or, in proper cases, an involuntary plaintiff.

> "(b) *Effect of failure to join.*—When persons who are not indispensable, but who ought to be parties if complete relief is to be accorded between those already parties, have not been made parties and are subject to the jurisdiction of the court as to both service of process and venue, the court shall order them summoned to appear in the action. The court in its discretion may proceed in the action without making such persons parties, if its jurisdiction over them as to either service of process or venue can be acquired only by their consent or voluntary appearance; provided, however, that the judgment rendered in the action shall not affect the rights or liabilities of absent persons, except as provided in Rule 23 (a)."

Our perusal of the record reveals that the entire thrust of the evidence has been to prove HUD's control over the Authority. Defendant, of course, argued indispensability on the basis that HUD was the real party in

interest. Defendant's alternative claims or defenses against HUD were not developed in the trial court and cannot be considered here.

Facts determine whether a party is indispensable and in whose absence a case may not proceed; or in the alternative, necessary, in which case the court may proceed if to do so would be consistent with principles of equity and good conscience. *See* Note, *Indispensable Parties Under the Federal Rules of Civil Procedure*, 56 Yale L.J. 1088, 1090-1091 (1947):

> "This emphasis on possible ouster of jurisdiction, while logical at first blush, ignores the underlying theme of Rule 19(b). The Rule in terms makes the determination of indispensable parties an exercise of a court's discretion; and the long history of the similar doctrine in equity indicates that the controlling limitation on this discretion is whether or not, under the particular facts of each case, absent parties will be adversely affected by non-joinder. It has been considered well settled, moreover, that "equity will strain" to reach a decree nonprejudicial to absentees. Thus the trial judge may deny without prejudice a preliminary motion to dismiss until such time as it may appear that none of the alternative decrees consonant with the evidence could be entered without injuring interested parties. At the end of the trial his problem is to fashion the actual decree to conform to the merits and yet work no injustice to absentees. *Even a decree which leaves the controversy open to further litigation is usually preferred to no settlement at all,* and the decree may be framed especially to protect an absent party. Only if the judge determines at any point in the trial that no satisfactory decree can be devised does judicial discretion end; only then must the absentee be called indispensable and the suit dismissed for lack of jurisdiction." (Emphasis added.)

The italicized language reflects our thinking about the philosophy of Rule 17 application as well as that which should control use of Rule 19.

Fortunately, the assignment by the Housing Authority to HUD of all the Authority's rights in the Bluefield project, and the subsequent intervention by HUD here, answer all of defendant's prayers: HUD has now become a real party in interest and is present in the case for all purposes, incidentally, obviating the necessity for further fact-finding about its indispensability.

This case is yet another monument to lawyer frailty, demonstrated by our adoption of pleading rules that seem, forever, to generate litigation. Lest we forget, Rule 1, W.Va. R.C.P. admonishes us that the rules ". . . shall be construed to secure the *just, speedy,* and *inexpensive* determination of every action." (Emphasis added.)

We find that the trial court erred in determining that Bluefield Housing Authority was not a real party in interest. This erroneous conclusion led the trial court to find HUD to be the real party in interest and indispensable, and to dismiss when HUD failed to enter the suit. We reverse and remand the case to the circuit court for trial between the parties as now constituted.

*Reversed and remanded.*