MORRIE BLAIR, *et al.*

*v.*

FREEBURN COAL CORPORATION, *etc., et al.*

(No. 13867)

Decided April 10, 1979.

*Hostler & Shinaberry, Sterl F. Shinaberry* for appellants.

*Bowles, McDavid, Graff & Love, Gerald R. Stowers* for Freeburn Coal Corp.

*Huddleston, Bolen, Beatty, Porter & Copen, Richard J. Bolen, Andrew S. Zettle* for Carmark Coal.

*Vance Yoakum* for Thacker Land.

CAPLAN, CHIEF JUSTICE:

This is an appeal from a civil action instituted in the Circuit Court of Mingo County. Therein, the plaintiffs, Morrie Blair and Winner Development Corporation, sought to obtain possession of a certain tipple and loading facility (hereinafter referred to as "tipple") purchased by Blair at a tax sale in 1973 for the sum of $16.00. The plaintiffs also sought an accounting for the use of the tipple, a permanent injunction and $100,000.00 in damages.

The plaintiffs allege in their complaint that by deed dated March 16, 1973, plaintiff Blair obtained a fee simple title from the Deputy Commissioner of Forfeited and Delinquent Lands for Mingo County "to the real estate known as the tipple and/or loading dock situate at Thacker No. 2, Magnolia District, Mingo County, West Virginia, which real estate was formerly owned by Interstate Coal Company, a corporation, the title to which real estate was forfeited to the State of West Virginia for non-payment of ad valorem taxes for the year 1969 . . ." Plaintiff Blair thereafter took possession of the tipple; that property was entered on the land books by the assessor as real estate; and Blair has since paid taxes thereon.

By lease dated September 25, 1974 Blair leased the tipple to plaintiff Winner Development Corporation. Winner attempted to enter into possession and use of such facilities but found that defendant Freeburn Coal Corporation had taken possession thereof. The plaintiffs complain that Freeburn has unlawfully and illegally withheld "said facilities and real estate" without authority from either of them.

The defendant did not file an answer to the complaint but did file a timely motion to dismiss on the ground that the plaintiffs failed to join indispensable parties. It stated the following reasons: (1) Freeburn is a bona fide lessee under a written lease from Carmack Coal Company (sometimes referred to as corporation), making Carmark an indispensable party; (2) the tipple being on the real estate of Thacker Land Company, Thacker is an indispensable party.

On December 5, 1974, defendant Freeburn Coal Corporation filed a motion for summary judgment. It therein stated that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law on the ground that the alleged sale of the tipple to Blair by the Deputy Commissioner of Forfeited and Delinquent Lands is not a valid sale of real estate for the reason that the tipple is not real property but is person-

al property. Therefore, concludes the motion, Blair, having no title, has no basis for this civil action. Ruling upon these motions, the court by order entered September 22, 1975, required that Carmark Coal Company and Thacker Land Company be made parties defendant to this action. Further, by a second order of the same date, for the reasons stated in a Memorandum Opinion, incorporated in and made a part of this order, the court held that the tipple was personal property and that it was illegally and invalidly assessed as real property, thereby making the assessment absolutely void. Thus, the sale of the subject tipple was declared void. It is from this order that the plaintiffs appeal. We affirm.

The record reveals that in 1947 Red Jacket Coal Corporation, a lessee of Thacker Land Company, contracted with Blythe Brothers, Inc. to build the subject tipple and loading facilities and that such facilities were built on Thacker lands. For some unexplained reason Blythe retained the tipple and on November 11, 1950, by bill of sale, transferred it to Virginia Smokeless Coal Company. That company changed its name to Jewell Ridge Coal Sales Company and continued its ownership of the tipple until December 21, 1954, when it transferred it by bill of sale to Interstate Coal Corporation. Interstate leased the land upon which the tipple was situate from Thacker Land Company.

On May 1, 1964 Thacker extended its lease to Interstate for two years under which Interstate had "the right to maintain, use, enjoy, operate, repair, alter and remove the coal tipple" from its property. Subsequently, on December 31, 1968, Thacker granted to Carmark Coal Company a five year lease of the Alma seam of coal under 633.26 acres, this being the acreage upon which the subject tipple is located. By a bill of sale dated January 20, 1969, Interstate sold the subject tipple to Carmark, covenanting that it was the owner of the tipple and that it was free from all encumbrances.

Thacker Land Company, by letter to Carmark Coal Corporation, dated March 14, 1969, noted the sale of the

tipple by Interstate to Carmark on January 20, 1969 and continued: "In view of the fact that Carmark now owns this facility and proposes to use it in the conduct of its coal operations under its coal mining lease from Thacker Land Company, the agreement of lease for the tipple site between Thacker and Interstate, dated May 1, 1964 as extended ... is hereby cancelled and terminated ... The coal tipple and processing facilities now become a part of the leasehold and subject to the terms and conditions of the coal mining lease between Thacker and Carmark Coal Corporation dated December 31, 1968."

Of further significance is a provision of the May 1, 1964 lease between Thacker Land Corporation and Interstate. It is therein provided, if the lessee's (Interstate) "machinery, motors, equipment, facilities and supplies of every kind and character upon the leasehold or that were used thereon or in connection therewith" are "not removed within the said six (6) months the same shall revert to and become the absolute property of the Lessor."

The ultimate question posed, the answer to which is dispositive of this case, is whether plaintiff Blair acquired a valid title to the tipple through the deed from the Commissioner of Forfeited and Delinquent Lands. We conclude, for the reasons hereinafter stated, that he did not.

It was contended by the defendant at the trial and it is its position here that the tipple was personal property, not realty, and was therefore not susceptible to sale by the Deputy Commissioner; consequently, the purported deed of the Commissioner could not and did not convey valid title to Morrie Blair. We are in agreement with this contention and affirm the trial court's finding that in the circumstances revealed by the record in this case the tipple was personal property.

*W. Va. Code,* 1931, 11-5-3, as amended, defines personal property:

> The words 'personal property' as used in this chapter, shall include all fixtures attached to land, if not included in the valuation of such land entered in the proper land book; ... all chattels, real and personal ...

While Article 4, Chapter 11 of the Code, dealing with assessment of real property, does not contain a definition of real property, the following is found in *W. Va. Code*, 1931, 2-2-10:

> (p) The word 'land' or 'lands' and the words 'real estate' or 'real property' include lands, tenements and hereditaments, and all rights thereto and interests therein except chattel interests ...

Sections 1 and 2 of Article 4, referred to above, provide for the maintenance by the assessor of land books and for the entry therein of all real property in the manner prescribed by law. Also, personal property books shall be maintained by the assessor for the entry of all personal property. *W. Va. Code*, 1931, 11-5-1 and 2, as amended. Thus, the legislature has clearly provided that only real property is to be assessed on the land books.

As long ago as 1896, in *State v. South Penn Oil Co.*, 42 W. Va. 80, 24 S.E. 688, this Court, in a decision unchanged by time or subsequent wisdom, noted the importance of maintaining separate books for real property and personal property. Pointing out the statutes which require such separation and the fact that realty goes to heirs and personalty to a personal representative, the Court said "... the law does deem it important that the two kinds of property shall be kept and listed separate and distinct from each other, throughout the whole procedure for assessing and collecting taxes."

The tipple in the instant case, from the time that it was constructed by Blythe Brothers through various transfers, including the one from Interstate to Carmark, has been treated as personal property. It was transferred by Blythe Brothers by a bill of sale, by Jewell

Ridge Coal Company by a bill of sale and by Interstate by a bill of sale. During all of these transactions, covering a period from 1947 to 1969, Thacker, the owner of the land upon which the tipple is situate, never intended that it should be a part of the realty. In fact, by language in its lease to Interstate whereby Interstate had the right to remove the tipple, Thacker expressly disavowed any claim that the subject facilities were a part of its real property.

A "bill of sale" is defined in Black's Law Dictionary, Revised Fourth Edition, as "A written agreement, formerly limited to one under seal, by which one person assigns or transfers his right to or interest in *goods and personal chattels to another."* (Emphasis supplied) This tipple, having been transferred several times by bill of sale, was clearly considered by all concerned to be personal property. It was never intended by any that it become a part of the realty. Furthermore, under *W. Va. Code,* 1931, 36-1-1, real property can be conveyed only by deed or will.

The subject tipple, as noted by the court and as conceded by the plaintiffs, constituted a "fixture". This fixture was situate upon Thacker lands, although it was never included in the valuation of such lands. Personal property, as statutorily defined above, "shall include all *fixtures attached to land, if not included in the valuation of such land* entered in the proper land book." (Emphasis supplied) In this case, pursuant to *W. Va. Code,* 1931, 11-3-7, the assessor of Mingo County "shall ascertain the value of all ... fixtures attached thereto, and include the same in the value of the building charged to the owner, unless it appears that such ... fixtures are owned by some person other than the owner of the building, in which case the value of such ... fixtures shall be assessed to their owner as personal property ..." Had the fixtures been assessed in Interstate's name in the personal property books, the assessment would have been lawful and proper. This was not done. The fixture being clearly owned by someone other than the

owner of the land, any attempt by the assessor to include the value of the fixture in the value of the land would be erroneous. The trial court found that "the tipple [fixture] was unlawfully and improperly entered as 'Improvements on leasehold' in the name of Interstate the lessee-owner thereof, in the land books". This tipple, in the circumstances revealed by the record, is a chattel real—it is an interest in the real estate less than a freehold and is personal property. *See* 63 Am Jur. 2d, *Property*, § 24 and cases cited in the footnotes thereto. Being personal property the tipple should not have been entered in the real property books. It was an absolutely void assessment. The difficulty in determining whether machinery and appliances, such as the instant tipple facilities, used by tenants in the prosecution of various industries and mining operations are to be considered personalty or realty has been obviated by the above quoted language defining fixtures as personal property when not included in the valuation of the land upon which it is situate. This was so in 1899, as expressed by the Court in *Carter v. Tyler County Court*, 45 W. Va. 806, 32 S.E. 216, and, since the quoted statutory language remains unchanged, is so today.

Basically, whether a fixture becomes part of the real estate to which it is affixed is determined by the intention of the parties. *Freeman v. Truax*, 103 W. Va. 132, 136 S.E. 697 (1927); *Snuffer v. Spangler*, 79 W. Va. 628, 92 S.E. 106 (1917); *Gartland v. Hickman*, 56 W. Va. 75, 49 S.E. 14 (1904). In the circumstances herein noted, it was clearly the intention of the parties that the tipple not become a part of the realty and that it remain the property of the lessee, Interstate. It should have been entered in the personal property books in Interstate's name. The assessor having illegally entered the tipple on the land books as "Improvements on leasehold" in the name of Interstate, the assessment was void and could constitute no valid basis for the sale of the tipple by the Commissioner of Forfeited and Delinquent Lands to Blair. The Commissioner could convey only that which legally came into his hands. This tipple did not.

The Court, in *Bailey v. Baker,* 137 W. Va. 85, 68 S.E.2d 74 (1951) 70 S.E.2d 645 (1952—on rehearing) said in Syllabus No. 4:

A tax sale under a void assessment, or where there is no assessment, and a deed made pursuant to such sale are void.

As herein noted, the assessment in the instant case was void and the deed made pursuant to the sale under such assessment is void. See *Marlea Corporation v. Casto,* _____ W. Va. _____, 242 S.E.2d 923 (1978); *Pearson v. Dodd,* _____ W. Va. _____, 221 S.E.2d 171 (1975); *Shaffer v. Mareve Oil Corporation,* _____ W. Va. _____, 204 S.E.2d 404 (1974); *Thaxton v. Beard,* _____ W. Va. _____, 201 S.E.2d 298 (1973); *Hardman v. Ward,* 136 W. Va. 370, 67 S.E.2d 537 (1951); and *Cunningham v. Brown,* 39 W. Va. 588, 20 S.E. 615 (1894).

The plaintiffs contend that the legality of the assessment is *res judicata* in that such legality was adjudicated by the order confirming the sale of the tipple in the suit instituted by the Deputy Commissioner of Forfeited and Delinquent Lands of Mingo County. They cite in support of their contention *Robinson Improvement Company v. Tasa Coal Company,* 143 W. Va. 293, 101 S.E.2d 67 (1957). That case involved real estate, was based partly on *W. Va. Code,* 1931, 11A-4-33, as amended, relating only to real estate and the plaintiff was a party in the delinquent land suit. Clearly, that case is distinguishable from the instant case. The defendants here were not parties to the suit in which the sale to Blair was confirmed. Thus, as noted in *Pearson v. Dodd,* _____ W. Va. _____, 221 S.E.2d 171 (1975), there was no "identity of persons, and of parties to the action," an element essential to justify the application of the doctrine of *res judicata.* Furthermore, Sec. 33, cited above, designed to cure irregularities in a delinquent land sale, is not applicable to this case, the tipple being personalty, not realty. Finally, the defendants, not having been parties in the delinquent land suit, could not have appealed the deci-

sion therein and have not had their day in court. The contention of *res judicata* is without merit.

For the reasons herein set forth, the judgment of the Circuit Court of Mingo County is affirmed.

*Affirmed.*