**IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA**

**September 2021 Term**

_____

**No. 20-0030**

_____

**FILED**
**November 18, 2021**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**ORVILLE YOUNG, LLC,**
**A FLORIDA LIMITED LIABILITY COMPANY; AND**
**ROLACO, LLC,**
**A FLORIDA LIMITED LIABILITY COMPANY,**
**Defendants Below, Petitioners**

**V.**

**FRANK A. BONACCI AND**
**BRIAN F. BONACCI,**
**Plaintiffs Below, Respondents**

**AND**

**LOUISE S. COULLING; CLARK H. COULLING;**
**HEIDI SCHENK BRUHN;**
**MARY SCHENK HAMILTON; GARY P. HAMILTON;**
**KAREN SCHENK SLIGAR; TERRY B. SLIGAR; AND**
**WHITE HORSE FARM, LLC,**
**A WEST VIRGINIA LIMITED LIABILITY COMPANY,**
**Defendants Below, Respondents**

_____

**Appeal from the Circuit Court of Marshall County**
**The Honorable Jeffrey D. Cramer, Judge**
**Civil Action No. 18-C-16-C**

**AFFIRMED**

_____

**Submitted: October 5, 2021**
**Filed: November 18, 2021**

William J. Leon
William J. Leon, LC
Morgantown, West Virginia
Attorney for the Petitioners

Michael S. Garrison
SPILMAN THOMAS & BATTLE, PLLC
Charleston, West Virginia
David R. Croft
W. Eric Gadd
Christina S. Terek
Gerald E. Lofstead III
SPILMAN THOMAS & BATTLE, PLLC
Wheeling, West Virginia
Attorneys for the Respondents,
Frank A. Bonacci and Brian F. Bonacci

**CHIEF JUSTICE JENKINS delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1.  "The State is not entitled to double taxes on the same land under the same title."  Syllabus point 1, *State v. Allen*, 65 W. Va. 335, 64 S.E. 140 (1909).

2.  "In case of two assessments of the same land, under the same claim of title, for any year, one payment of taxes, under either assessment, is all the State can require."  Syllabus point 2, *State v. Allen*, 65 W. Va. 335, 64 S.E. 140 (1909).

3.  "A deed made pursuant to a tax sale under a void assessment is void."  Syllabus point 4, *Blair v. Freeburn Coal Corp.*, 163 W. Va. 23, 253 S.E.2d 547 (1979).

**Jenkins, Chief Justice:**

The petitioners herein and defendants[1] below, Orville Young, LLC, and Rolaco, LLC, which are both Florida limited liability companies (collectively, "the Petitioners"), appeal from the December 16, 2019 order entered by the Circuit Court of Marshall County. By that order, the circuit court granted summary and declaratory judgment to the respondents herein and plaintiffs below, Frank A. Bonacci and Brian F. Bonacci (collectively, "the Bonacci brothers"), finding that the Bonacci brothers were the owners of the undivided oil and gas estate at issue because the tax deeds through which the Petitioners allegedly had obtained title to the same mineral estate were void. On appeal to this Court, the Petitioners contend that the circuit court erred in determining that the Bonacci brothers, and not the Petitioners, own the subject oil and gas estate. Upon a review of the parties' arguments, the appendix record, and the pertinent authorities, we agree with

---

[1]While the complaint giving rise to the instant proceeding denominates the parties as petitioners and respondents, we find the terms "plaintiffs" and "defendants" to be the more common terms by which parties to a civil action are referred in the circuit court. *See* W. Va. R. Civ. P. 3(a) (observing that "[a] civil action is commenced by filing a complaint with the court") and 17 (referencing "[p]arties [p]laintiff and [d]efendant" in civil action context). *See also United Rys. & Elec. Co. of Baltimore v. Winer*, 144 Md. 235, 239, 125 A. 61, 63 (1923) (construing plaintiff to be "[t]he person in whose name the suit is brought" or the "person or party who brings an action, who complains or sues any person in an action" (internal quotations and citations omitted)); *Brickell v. Shawn*, 175 Va. 373, 377, 9 S.E.2d 330, 331 (1940) (defining "plaintiff" as "[a] person who essays to set in court" (internal quotation and citation omitted)). *Cf. Hous. Auth. of City of Greensboro v. Farabee*, 284 N.C. 242, 246, 200 S.E.2d 12, 15 (1973) ("For all practical purposes, the words 'petitioner' and 'plaintiff' are synonymous. 'The nature of the proceeding and the court in which it is instituted determines which term is the more appropriate under the circumstances.' [*State ex rel.*] *Utilities Commission v.* [*Martel*] *Mills Corporation*, 232 N.C. 690, 62 S.E.2d 80 (1950)."). Therefore, to maintain consistency with our customary nomenclature, we will refer to the parties' postures in the circuit court proceedings as that of plaintiffs and defendants.

1

the circuit court's conclusion that the underlying tax deeds were void because the Bonacci brothers' predecessors in interest had paid the property taxes assessed on the subject, undivided oil and gas estate; the taxes thereon were not delinquent; and no tax lien attached to the mineral estate that could be sold at a tax sale. Accordingly, we affirm the circuit court's December 16, 2019 summary and declaratory judgment order determining the Bonacci brothers are the owners of the undivided and unsevered oil and gas estate at issue in this case.

## I.

## FACTUAL AND PROCEDURAL HISTORY

The Bonacci brothers instituted this proceeding by filing a complaint in the Circuit Court of Marshall County against the Petitioners and the additional respondents to this appeal[2] seeking declaratory judgment and to quiet title to the subject oil and gas estate,

---

[2]The additional respondents herein and defendants below, Louise S. Coulling; Clark H. Coulling; Heidi Schenk Bruhn; Mary Schenk Hamilton; Gary P. Hamilton; Karen Schenk Sligar; Terry B. Sligar; and White Horse Farm, LLC, a West Virginia limited liability company (collectively, "Additional Respondents"), are relatives of the Bonacci brothers who own the remaining portion of the oil and gas estate underlying the property owned by their common predecessor in title, as well as a business concern owned by one such relative. The Bonacci brothers claim that they joined these relatives in accordance with Syllabus point 2 of *O'Daniels v. City of Charleston*, 200 W. Va. 711, 490 S.E.2d 800 (1997), which holds that

> [w]hen a court proceeding directly affects or determines the scope of rights or interests in real property, any persons who claim an interest in the real property at issue are indispensable parties to the proceeding. Any order or decree issued in the absence of those parties is null and void.

2

in which they claim an undivided ownership interest, underlying a 202-acre surface tract of property in Marshall County, West Virginia. The chain of title giving rise to their claim of ownership is as follows. In June 1906, Albert M. Schenk ("Mr. Schenk"), the Bonacci brothers' great-great-grandfather, acquired, by deed, over 500 acres of farmland in Marshall County. Thereafter, in 1919, Mr. Schenk leased the oil and gas interests underlying a 202-acre surface tract of his property to a third party, but Mr. Schenk retained ownership of the oil and gas estate, himself, as there is no deed severing this mineral estate from the surface estate of the property he owned.

By will probated following Mr. Schenk's death in 1930, Mr. Schenk's grandson, Albert Schenk, III ("Mr. Schenk, III"), received the entirety of his grandfather's real property, including the entire 500+-acre estate, which contains the 202-acre surface tract and the subjacent oil and gas estate at issue herein. This property was not immediately transferred to Mr. Schenk, III, though; rather it was held in trust for him until he attained the age of 40. The trust transferred the aforementioned real estate to Mr. Schenk, III, by deed in 1957. Following the death of Mr. Schenk, III, in 1995, the property passed to his wife, who, by deed in 2000, conveyed several tracts of land to her daughter, Katherine

---

*Cf.* Syl. pt. 2, *Hous. Auth. of City of Bluefield v. E.T. Boggess, Architect, Inc.*, 160 W. Va. 303, 233 S.E.2d 740 (1977) ("Under Rule 17, W. Va. R.C.P. it is not a plaintiff's responsibility, under pain of dismissal, to bring in every party who might have a substantive law right against the defendant. It is sufficient Rule 17 compliance if the plaintiff has a substantive right to sue."). Despite having been named as parties below, the Additional Respondents did not participate in the circuit court proceedings nor do they make an appearance on appeal before this Court.

Schenk Bonacci, which were a part of the 202-acre surface tract under which the oil and gas estate at issue herein is situate; the remainder of the subject property, including the remaining portion of the 202-acre surface tract containing the subject oil and gas estate, was conveyed to Mr. Schenk's other children, who are Katherine's siblings and who have been named as parties of interest herein but who have not participated in these proceedings.[3]  By deeds recorded in 2011 and 2012, Katherine Schenk Bonacci conveyed all of her ownership interest in the subject property to her sons, as tenants in common, the Bonacci brothers.  The Bonacci brothers thereafter subdivided the 162.78-acre tract they had received from their mother, and which is part of the 202-acre surface tract under which lies the oil and gas estate at issue in this case, so that they each now own an 81.39-acre tract thereof.

At all times, from Mr. Schenk's ownership of the property, to the trust's holding of the property and the ownership of the property by Mr. Schenk, III, to his heirs' ownership of the property, including the Bonacci brothers, the real property taxes have been paid on the entirety of the 500+-acre estate, of which the 202-acre surface tract and the oil and gas estate subjacent thereto form a part.

Following the 1919 lease of the oil and gas interests subjacent to the 202-acre surface tract by Mr. Schenk, the trust for Mr. Schenk, III, and Mr. Schenk's estate

---

[3]*See supra* note 2.

entered into agreements with the Natural Gas Company of West Virginia to reduce the royalties payable on two wells, i.e. well numbers 629 and 630, drilled pursuant to the 1919 oil and gas lease. Thereafter, in 1935, the Marshall County Assessor ("the Assessor") entered two assessments against Mr. Schenk's estate and trust for the subject realty: one for the 500+-acre parcel and another denominated as "202 Royalty Wells #629-630 Nat Gas Co W. Va.," which description reflected the oil and gas leasehold interests, as evidenced by the payment of royalties thereon pursuant to the 1919 lease, of the 202-acre portion of the 500+-acre parcel.[4] The Assessor had made this assessment pursuant to his practice of separately assessing mineral interests once a lease of such interests had been entered into and royalties had been paid in accordance therewith. The estate, trust, and/or heirs of Mr. Schenk paid both of these assessments for 1935, but, in 1936, the estate, trust, and/or heirs paid only the assessment for the 500+-acre parcel and did not pay the assessment for the oil and gas interests of the 202-acre portion thereof.

Thereafter, the taxes assessed on the oil and gas leasehold interests of the 202-acre surface tract were declared to be delinquent; the oil and gas interests were offered for sale at a sheriff's tax sale at which there were no interested purchasers; and ultimately

---

[4]While the interest identified in the Assessor's records as "202 Royalty Wells #629-630 Nat Gas Co W. Va." is sometimes referred to as "the oil and gas interests," such references should not be construed to mean that the oil and gas estate at issue herein has been severed from the 202-acre surface estate under which it is situate. Rather, the record is clear that Mr. Schenk and his heirs have continuously retained, and continue to maintain, ownership of the subject oil and gas estate.

the oil and gas interests[5] of the 202-acre surface tract were sold at a sale of forfeited and delinquent lands to Everett Moore ("Mr. Moore") by tax deed recorded in 1949. Several years later, the taxes on the oil and gas interests[6] of this tract again were declared to be delinquent, and Orville Young ("Mr. Young") purchased the same at a sheriff's tax sale in 1995, as reflected by the 1997 tax deed therefor. Mr. Young then formed Orville Young, LLC,[7] in 2013, the members of which were his three sons, and transferred his interest in the oil and gas interests of the 202-acre surface tract to Orville Young, LLC, by quitclaim deed in 2013. Later in 2013, Mr. Young's sons formed Rolaco, LLC,[8] and, in 2018, Orville Young, LLC, transferred the subject oil and gas interests of the 202-acre surface tract to Rolaco, LLC, also by quitclaim deed.

The Bonacci brothers filed the instant declaratory judgment proceeding to establish the ownership of and to quiet title to the oil and gas estate of the 202-acre surface tract of which the entire 162.78 acres they received from their mother are a part. Ultimately, the Bonacci brothers moved for summary judgment, which motion the circuit court granted by order entered December 16, 2019. In so ruling, the circuit court

---

[5]Although the additional assessment pertained to the oil and gas *leasehold interests*, the tax deed issued to Everett Moore purported to convey to him the oil and gas *estate*, which mineral estate has never been severed from the surface of the realty owned by Mr. Schenk and his heirs. *See supra* note 4.

[6]*See* note 5, *supra*.

[7]Orville Young, LLC, is one of the petitioners herein.

[8]Rolaco, LLC, is the other petitioner herein.

determined that the Assessor's separate assessment of the subject oil and gas leasehold interests, which began in 1935, were duplicative of the assessment simultaneously levied on the entire 500+-acre parcel owned by Mr. Schenk, and later his estate, trust, and heirs, because the oil and gas estate underlying the 202-acre surface tract thereof had never been severed from the surface estate.  As such, the circuit court declared the 1949 tax sale of the oil and gas interests to Mr. Moore void, as well as any subsequent deeds purportedly conveying the same, unsevered oil and gas interests.  The petitioners now appeal the circuit court's ruling.

## II.

## STANDARD OF REVIEW

The case sub judice is before this Court on appeal from the circuit court's order granting the Bonacci brothers' motion for summary judgment as well as declaratory relief.  We apply a plenary review to a circuit court's summary judgment order: "A circuit court's entry of summary judgment is reviewed *de novo*."  Syl. pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).  To determine whether summary judgment is proper in a particular case, we consider the facts and the law underlying the circuit court's decision.  In this regard, we have held that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law."  Syl. pt. 3, *Aetna Cas. & Sur. Co. v. Fed. Ins. Co. of N.Y.*, 148 W. Va. 160, 133 S.E.2d 770 (1963).

7

Likewise, we review anew a circuit court's award of declaratory judgment: "[a] circuit court's entry of a declaratory judgment is reviewed *de novo*." Syl. pt. 3, *Cox v. Amick*, 195 W. Va. 608, 466 S.E.2d 459 (1995). This is so because "a declaratory judgment action . . . resolve[s] legal questions," *id.* at 612, 466 S.E.2d at 463, given that

> the purpose of a declaratory judgment
>
>> is to avoid the expense and delay which might otherwise result, and in securing in advance a determination of legal questions which, if pursued, can be given the force and effect of a judgment or decree without the long and tedious delay which might accompany other types of litigation.

*Id.* (quoting *Harrison v. Town of Eleanor,* 191 W. Va. 611, 615, 447 S.E.2d 546, 550 (1994) (quoting *Crank v. McLaughlin,* 125 W. Va. 126, 133, 23 S.E.2d 56, 60 (1942))) (emphasis added; additional citation omitted). Guided by these standards, we proceed to consider the parties' arguments.

## III.

## DISCUSSION

On appeal to this Court, the Petitioners contend that the circuit court erred by invalidating the tax deed through which they claim their ownership interest in the subject oil and gas estate; that the description of the oil and gas estate at issue herein is not sufficiently definite so as to ascertain its precise location; and that the Bonacci brothers do not have standing to bring their suit on behalf of the owners of the remainder of their

8

common predecessor's tract. The Bonacci brothers urge this Court to affirm the circuit court's rulings. We consider these alleged errors in turn.

### A. Standing

We begin our analysis with the determination of the standing issue raised by the Petitioners insofar as resolution of this issue could impact our decision of the remaining issues. The parties do not dispute that the Bonacci brothers inherited 162.78 acres of real property from their mother who is, like they are, a direct descendant of the original owner of the subject property, Mr. Schenk. This parcel is part of the 202-acre surface tract under which lies the disputed oil and gas estate, and the Bonacci brothers' parcel also is a portion of the original 500+-acre parcel owned by Mr. Schenk. In filing their complaint against the Petitioners, below, seeking a declaration of their ownership interests and to quiet title to the same, the Bonacci brothers also named as Additional Respondents their relatives who also are direct descendants of Mr. Schenk and who also have inherited a portion of his 500+-acre parcel, including the remainder of the 202-acre surface tract thereof under which lies the subject oil and gas estate.

The Petitioners do not complain that the Bonacci brothers cannot file the instant proceeding to vindicate their own ownership interests in this case but, rather, that the Bonacci brothers cannot seek also to resolve the status of the Additional Respondents' ownership interests that may be impacted by the resolution of the Bonacci brothers' claims in this proceeding. On this point, we concur with the circuit court's assessment that the

9

Bonacci brothers were proper parties to seek a declaration of their ownership of the disputed oil and gas estate at issue herein insofar as a determination of the Bonacci brothers' rights of a portion of the disputed property necessarily impacts the rights of the owners of the remainder of such property. In this vein, the Bonacci brothers properly joined the Additional Respondents as parties to their underlying complaint as required by this Court:

> When a court proceeding directly affects or determines the scope of rights or interests in real property, any persons who claim an interest in the real property at issue are indispensable parties to the proceeding. Any order or decree issued in the absence of those parties is null and void.

Syl. pt. 2, *O'Daniels v. City of Charleston*, 200 W. Va. 711, 490 S.E.2d 800 (1997). *Accord* Syl., *Mfrs.' Light & Heat Co. v. Lemasters*, 91 W. Va. 1, 112 S.E. 201 (1922) ("Generally, all persons who are materially interested in the subject-matter involved in a suit, and who will be affected by the result of the proceedings, should be made parties thereto, and when the attention of the court is called to the absence of any of such interested persons, it should see that they are made parties before entering a decree affecting their interests."). *See also* W. Va. R. Civ. P. 17 (explaining "[p]arties [p]laintiff and [d]efendant") and 19 (establishing "[j]oinder of [p]ersons [n]eeded for [j]ust [a]djudication"). Pursuant to this authority, such joinder was just as necessary to ensure the security of the Additional Respondents' rights as it was to determine the Bonacci brothers' ownership interests in the first instance.

Moreover, the language of the governing statute, itself, suggests that the Bonacci brothers have standing to seek a declaration of their ownership of an undivided interest in the oil and gas estate at issue herein as well as to pursue the instant action to quiet title thereto. The portions of West Virginia Code section 11-4-9 (eff. 1935) that (1) permit an owner of an undivided interest in property to pay taxes on the entirety of the property and (2) also allow an owner of an undivided interest in property to redeem the property by paying the taxes due on the entirety of the property once the taxes have been declared to be delinquent suggest that the owner of an undivided interest in property additionally may take measures to safeguard the entirety of the property as protection of the whole necessarily also protects the owner's undivided interest in the whole. Accordingly, we find the Bonacci brothers have standing to pursue their claims in this matter and that they properly named the Additional Respondents as parties to these proceedings.

### B. Validity of Tax Assessment and Resultant Tax Deeds

The Petitioners next argue that the circuit court erred by finding that the Assessor improperly separately assessed taxes on the subject oil and gas interests and declared said taxes to be delinquent, and then finding that further error occurred when the purported tax liens thereon were sold and deeds therefor granted to Mr. Moore and Mr. Young. The Bonacci brothers respond by contending that the circuit court correctly found the assessment duplicative and the resultant tax deeds void. We agree with the circuit court that our case law and the governing statute clearly state that duplicate assessments on a

11

single parcel of property are not permitted. Moreover, when a single landowner owns both the surface and the subjacent mineral estate in a parcel of property and such mineral estate has not been severed from the surface, the property should be assessed as a single, whole unit and not as separate assessments for the surface estate and the mineral estate. Finally, given the invalidity of the duplicative assessment, the tax deeds issuing from the attempt to recoup the invalid, duplicative assessment are void.

We begin our analysis of this issue with a review of the statutory construction canons that will guide our consideration of the governing statute. At the outset, we endeavor to understand the intent with which the Legislature adopted a legislative enactment. Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975) ("The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature."). We also strive to faithfully adhere to such legislative intent by applying plain statutory language and interpreting such enactments only where the statute's clear meaning is ambiguous or otherwise not apparent from the specific words employed. *See* Syl. pt. 2, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951) ("A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect."). *See also* Syl. pt. 1, *Farley v. Buckalew*, 186 W. Va. 693, 414 S.E.2d 454 (1992) ("A statute that is ambiguous must be construed before it can be applied.").

Turning now to the parties' arguments, the Petitioners contend that the circuit court erred by declaring void the tax deeds obtained by their predecessors as a result of the delinquency of the taxes assessed on the oil and gas interests, while the Bonacci brothers contend such taxes were never delinquent and subject to sale in support of the circuit court's decision. We long have held that "[t]he object of the [S]tate is to collect from every one who claims title to land the taxes thereon, at a fair cash valuation." Syl. pt. 1, *State v. Low*, 46 W. Va. 451, 33 S.E. 271 (1899). Thus, there is no dispute that taxes were required to be paid on the property owned by the Bonacci brothers under which lies the subject oil and gas estate; rather, the issue is whether failure to pay the separate assessment on the oil and gas leasehold interests resulted in a delinquency and tax lien subject to sale.

As to this point, our precedent clearly establishes that property may be assessed but once for taxes and that one full satisfaction of such taxes is all the State may require. In this regard, we succinctly have held that "[t]he State is not entitled to double taxes on the same land under the same title." Syl. pt. 1, *State v. Allen*, 65 W. Va. 335, 64 S.E. 140 (1909). Thus, "[i]n case of two assessments of the same land, under the same claim of title, for any year, one payment of taxes, under either assessment, is all the State can require." Syl. pt. 2, *Allen*, 65 W. Va. 335, 64 S.E. 140. *Cf.* Syl. pt. 3, *Allen*, 65 W. Va. 335, 64 S.E. 140 ("Payment of taxes, upon an assessment of a tract of land as a whole, nullifies a tax sale of a parcel which has been conveyed therefrom and separately assessed for the same year."); Syl. pt. 2, *Low*, 46 W. Va. 451, 33 S.E. 271 ("Where there is privity of title, one payment of taxes is sufficient and full satisfaction, whether the land is charged

13

as a whole in the name of one, or the various interests separated and charged to the respective owners, dividing the valuation equitably between or among them as provided in section 25, c. 29, Code.").

Additionally, the governing statute explicitly provides that separate assessments may not be made on undivided interests in property. In this respect, West Virginia Code section 11-4-9 employs the mandatory word "shall" to denote that separate assessments are required only where one person owns the surface estate and another person owns the mineral estate thereunder or timber thereon:

> When any person becomes the owner of the surface, and another or others become the owner of the coal, oil, gas, ore, limestone, fireclay, or other minerals or mineral substances in and under the same, or of the timber thereon, the assessor shall assess such respective estates, or any undivided interest therein, to the respective owners thereof, or to groups of same requesting such group assessment, at their true and actual value, according to the rule prescribed in this chapter.

Application of the statutory construction maxim of *expressio unius est exclusio alterius* indicates that this provision does not then apply to a sole owner of both the surface estate and the unsevered mineral estate associated with that parcel of property, as is the case here. *See* Syl. pt. 3, *Manchin v. Dunfee*, 174 W. Va. 532, 327 S.E.2d 710 (1984) ("In the interpretation of statutory provisions the familiar maxim *expressio unius est exclusio alterius,* the express mention of one thing implies the exclusion of another, applies."). Based on the plain language of this statutory provision, then, it is clear that there exists a definite legislative intent that a sole owner's undivided interest in the surface estate and the

associated, unsevered mineral estate of a single parcel of property is considered to be a single tract of land that is subject to one tax assessment and not separate tax assessments for each constituent component interest.

Unlike the facts referenced in the foregoing authorities that addressed separate parcels held by the same owner or one parcel held by multiple owners, the unique posture of the case sub judice is that it involves the Bonacci brothers' *undivided* interest in the *unsevered* oil and gas estate underlying their 162.78-acre surface parcel, which is part of the 202-acre surface tract[9] originally owned by Mr. Schenk, the oil and gas interests of which he leased[10] to a third-party in 1919. This distinction, however, does not alter the application of our longstanding precedent to the facts of this case. Simply stated, the Bonacci brothers jointly own 162.78 acres of real property,[11] which include the surface estate and the subjacent oil and gas estate at issue herein, because the mineral estate has never been severed from the surface estate by either the Bonacci brothers' predecessors in

_____

[9]The Additional Respondents are the owners of record of the remainder of the 202-acre surface tract of which the Bonacci brothers' realty forms a part, as well as the oil and gas estate underlying this remainder.

[10]Although Mr. Schenk leased the oil and gas interests underlying his 202-acre surface tract to a third-party, he retained ownership of this mineral estate and never severed the mineral estate from the surface. *See, e.g.*, *S. Penn Oil Co. v. Haught*, 71 W. Va. 720, 78 S.E. 759 (1913) (recognizing oil and gas lease conveys no interest in real property to lessee).

[11]While the Bonacci brothers jointly inherited the 162.78-acre parcel from their mother, they since have divided it into two, 81.39-acre parcels—one for each brother.

title or by the Bonacci brothers, themselves. The Assessor assessed taxes on the entirety of Mr. Schenk's 500+-acre parcel, which includes the Bonacci brothers' 168.39-acre parcel, and which, in turn, is a part of the 202-acre mineral estate in dispute. The record evidence clearly establishes that Mr. Schenk and all of his successors in interest paid the property taxes assessed on the entirety of the 500+-acre parcel, which includes all of its constituent parts; that payment of such taxes has remained current; and that the taxes on the entire 500+-acre parcel have never been delinquent or subject to a tax sale. As such, the State received one full payment of taxes on the entirety of Mr. Schenk's property, and continues to receive one full payment of taxes thereon from Mr. Schenk's successors in title, including the Bonacci brothers. This one full payment constitutes all the taxes that the State is entitled to receive on this parcel from which the mineral estate has never been severed.

By contrast, the interest that the Petitioners' predecessors allegedly acquired was attributable to the separate, erroneous assessment that the Assessor levied on the oil and gas leasehold interests underlying 202 acres of Mr. Schenk's 500+-acre parcel. While Mr. Schenk *leased* these interests to a third-party in 1919, he *never severed* this oil and gas estate from the surface estate, but, rather, retained ownership of the unextracted oil and gas interests and passed ownership of the oil and gas estate, along with the surface estate under which it lies, to his successors in title. Because the oil and gas estate was never severed from the surface estate, there was no separate property interest upon which the Assessor could assess taxes; therefore, the Assessor's assessment of taxes on property described as

16

"202 Royalty Wells #629-630 Nat Gas Co W. Va." was erroneous because the assessment did not relate to a separate interest in real property upon which the subject taxes could be assessed.[12]

Moreover, because the taxes on the entirety of the surface under which the separately assessed oil and gas interests lie were paid, remained current, and never were delinquent, full payment of the taxes on the 500+-acre estate satisfied the property's tax obligation, and the separate assessment, had it been proper, was void as duplicative. To this end, we have recognized that "[a]ctual delinquency is a condition precedent to the right to sell land under a tax assessment. There is no such delinquency when the taxes have in fact been paid, by the owner himself or by any other person entitled to make such payment." *State v. Allen*, 65 W. Va. at 339, 64 S.E. at 142. Furthermore,

> [b]y proceeding to sell land for non-payment of taxes, the State is simply proceeding to enforce its lien on the land for those taxes. If the taxes have in fact been received by the State, even upon some other assessment of the same land, which it has made or at least recognized by receipt of the taxes

---

[12] In fact, even if this assessment had been proper, the duplicative assessment, by its very description, related only to the royalties derived from the subject oil and gas leasehold interests, not to the actual oil and gas estate, itself, yet the conveyance described in Mr. Moore's deed resulting from the alleged delinquency of this duplicative assessment attempted to convey the actual oil and gas estate and not only the royalties as to which taxes had been duplicatively assessed. *See supra* note 5. Thus, the purported tax deed to Mr. Moore fails on this basis, as well, because only that which the grantor owned could have been conveyed, and, at most, the allegedly delinquent assessment pertained just to the oil and gas interests' royalties, and not to the oil and gas estate from which the royalties were derived. *See* Syl. pt. 2, *Blair v. Freeburn Coal Corp.*, 163 W. Va. 23, 253 S.E.2d 547 (1979) ("One who purchases property from a Deputy Commissioner of Forfeited and Delinquent Lands, receives no better title than that held by the State at the time of the execution and delivery of the deed.").

> thereunder, the lien has been relinquished. And where there is
> no lien there can be no valid sale.

*Id.* Based upon this analysis, we therefore conclude that the Assessor improperly levied a separate assessment on the oil and gas interests and compounded this error by finding such taxes to be delinquent when the erroneous, separate assessment was not timely paid. Because these taxes were duplicative and not valid, the State had no tax lien to enforce when the invalid taxes were not paid, and, thus, the State had no interest in the subject oil and gas interests to sell at the ensuing tax sales—both to Mr. Moore and, later, to Mr. Young.[13] In short, "[a] deed made pursuant to a tax sale under a void assessment is void." Syl. pt. 4, *Blair v. Freeburn Coal Corp.*, 163 W. Va. 23, 253 S.E.2d 547 (1979). *Accord* Syl. pt. 4, *Bailey v. Baker*, 137 W. Va. 85, 68 S.E.2d 74 (1951) ("A tax sale under a void assessment, or where there is no assessment, and a deed made pursuant to such sale are void."); Syl. pts. 3 & 4, *Cunningham v. Brown*, 39 W. Va. 588, 20 S.E. 615 (1894) (Syllabus point 3: "Where the assessment of a tract of land for taxation is illegal, a sale of such tract of land, made by the sheriff for nonpayment of the tax so assessed, is void."; Syllabus point 4: "For there can be no valid sale made by a sheriff of a tract of land as delinquent for the nonpayment of taxes where there has been no legal assessment of such taxes."). Therefore, the tax deeds issued to these gentlemen were void and conveyed no

---

[13]Despite the lengthy procedural history of this case, the Petitioners do not challenge the circuit court's ruling below that the Bonacci brothers' claims were not barred by the applicable statutes of limitations. *See* Syl. pt. 6, *Bradley v. Ewart*, 18 W. Va. 598 (1881) ("But if the land was improperly on the assessor's books and sold in such improper name, when the taxes had been paid by the rightful owner, the statute does not apply, and at any time in a proper case the said sale and deed may be declared illegal and void.").

interest in the oil and gas estate underlying the 202-acre surface parcel now owned by the Bonacci brothers and the Additional Respondents.  Accordingly, the circuit court's ruling reaching the same conclusion is hereby affirmed.[14]

## IV.

## CONCLUSION

For the foregoing reasons, the December 16, 2019 order of the Circuit Court of Marshall County awarding summary and declaratory judgment to the Bonacci brothers is hereby affirmed.

Affirmed.

---

[14]The Petitioners additionally contend that the circuit court erred by not defining the precise location of the oil and gas estate at issue herein.  Given our determination that the subject oil and gas estate was not subject to sale for nonpayment of taxes and that the deeds resulting from such sales were void, identification of the precise location of the oil and gas estate is not necessary to our resolution of this case. Nevertheless, we find that the circuit court's consideration of the deeds in the Bonacci brothers' chain of title as well as other associated historical documents sufficiently ascertained the location of this mineral estate.