IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2023 Term

**FILED**

**June 15, 2023**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Nos. 22-0139 and 22-0140

COLLINGWOOD APPALACHIAN MINERALS III, LLC,
OXY USA, INC.,
COLLINGWOOD APPALACHIAN MINERALS I, LLC, and
WACO OIL & GAS CO., INC.,
Defendants Below, Petitioners

v.

RICHARD L. ERLEWINE,
Plaintiff Below, Respondent

Appeal from the Circuit Court of Wetzel County
The Honorable David W. Hummel, Jr.
Case No. 20-C-54

REVERSED AND REMANDED

Submitted: April 18, 2023
Filed: June 15, 2023

Michael C. Cardi, Esq.
Jordan C. Maddy, Esq.
Bowles Rice LLP
Morgantown, West Virginia
Counsel for Petitioners Collingwood
Appalachian Minerals I, LLC and
Collingwood Appalachian III, LLC

W. Taylor Frankovitch, Esq.

Andrew R. Cutright, Esq.
Roger L. Cutright, Esq.
Cutright Law PLLC
Morgantown, West Virginia
Counsel for Respondent

Bowles Rice LLP
Canonsburg, Pennsylvania
Counsel for Petitioner Oxy USA, Inc.

Richard W. Gallagher, Esq.
Stephen F. Gandee, Esq.
Robinson & McElwee PLLC
Charleston, West Virginia
Counsel for Petitioner Waco Oil & Gas Co.,
Inc.

CHIEF JUSTICE WALKER delivered the Opinion of the Court.

JUSTICE HUTCHISON concurs, in part, and dissents, in part, and reserves the right to file a separate opinion.

SYLLABUS BY THE COURT

1.    "'A circuit court's entry of a declaratory judgment is reviewed *de novo*.' Syllabus Point 3, *Cox v. Amick*, 195 W. Va. 608, 466 S.E.2d 459 (1995)." Syllabus Point 1, *City of Martinsburg v. Berkeley Cnty. Couns.*, 241 W. Va. 385, 825 S.E.2d 332 (2019).

2.    "'In case of two assessments of the same land, under the same claim of title, for any year, one payment of taxes, under either assessment, is all the State can require.' Syllabus point 2, *State v. Allen*, 65 W. Va. 335, 64 S.E. 140 (1909)." Syllabus Point 2, *Orville Young, LLC v. Bonacci*, 246 W. Va. 26, 866 S.E.2d 91 (2021).

3.    "'A deed made pursuant to a tax sale under a void assessment is void.' Syllabus point 4, *Blair v. Freeburn Coal Corp.*, 163 W. Va. 23, 253 S.E.2d 547 (1979)." Syllabus Point 3, *Orville Young, LLC v. Bonacci*, 246 W. Va. 26, 866 S.E.2d 91 (2021).

4.    "In order to create an exception or reservation in a deed which would reduce a grant in a conveyance clause which is clear, correct and conventional, such exception or reservation must be expressed in certain and definite language." Syllabus Point 2, *Hall v. Hartley*, 146 W. Va. 328, 119 S.E.2d 759 (1961).

5.    "The term 'ambiguity' is defined as language reasonably susceptible of two different meanings or language of such doubtful meaning that reasonable minds

might be uncertain or disagree as to its meaning." Syllabus Point 4, *Est. of Tawney v.*

*Columbia Nat. Res.*, *L.L.C.*, 219 W. Va. 266, 633 S.E.2d 22 (2006).

WALKER, Chief Justice:

Petitioners and Respondent each participated in a tax sale in 1989 after a delinquent taxpayer failed to pay taxes on 135 acres of property[1] and twenty-five percent of its subjacent oil and gas estate.[2] Respondent bought the 135-acre property, and, on the same day, Petitioners bought the twenty-five percent interest in the oil and gas estate.[3] In 1993, Petitioners bought another twenty-five percent interest in the same oil and gas estate after a tax sale resulting from a different taxpayer's tax delinquency.[4] Then, almost three decades later, despite purchasing only the 135-acre property in the 1989 tax sale, Respondent sued Petitioners and claimed he owned the fifty percent interest in the oil and gas estate Petitioners purchased at the prior tax sales. Respondent argued that he owned the oil and gas interest Petitioners purchased at the 1989 tax sale because the tax assessor assessed the former, delinquent taxpayer inappropriately. And Respondent contended that he owned the other twenty-five percent interest in the oil and gas estate purchased by Petitioners in 1993 because the delinquent taxpayer had conveyed all of his oil and gas

---

[1] As used in this Opinion, "135 acres of property" or "135-acre property" means the property less its oil and gas estate.

[2] The parties maintain, and the circuit court found, that all of the interests at stake in this appeal are total of a fifty percent interest in the oil and gas. But, as noted in the facts below, the deeds in the record prior to the 1991 and 1995 tax deeds refer to these interests as interests in the "oil and gas royalty." To avoid confusion, we will refer to these interests as the parties did, rather than as the deeds provided.

[3] These respective interests were conveyed to the parties by tax deeds issued in 1991.

[4] This interest was conveyed to Petitioners by tax deed issued in 1995.

1

interest years earlier and did not own the oil and gas interest for which his taxes were delinquent. The circuit court granted summary judgment for Respondent.

On appeal, we reverse the circuit court as to Petitioners' 1991 deed because Respondent, a fellow tax-sale purchaser, lacks grounds under the relevant statute to challenge how the assessor assessed the delinquent taxpayer or the procedure by which the sheriff sold the delinquent tax payer's property interests. And we reverse the circuit court as to Petitioners' 1995 deed because the delinquent taxpayer clearly owned the twenty-five percent interest in the oil and gas estate for which his taxes were delinquent. We remand with directions that the circuit court enter summary judgment for Petitioners and to restore the parties' ownership interests to what they bargained for at the tax sales.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1909, J.E. Huff conveyed a 135-acre tract known as Huff Ridge to James W. Sivert. The deed reserved "one-half of all the oil and gas royalty" to Mr. Huff. So, Mr. Sivert owned the 135-acre property and fifty percent of the oil and gas royalty underlying it. Starting in 1930, the Wetzel County Assessor taxed Mr. Sivert's unsevered oil and gas interests separately from the remaining value of the 135-acre property.

Next, Mr. Sivert conveyed the 135-acre property and twenty-five percent of the oil and gas estate to Joseph and Myrtle Rogers by deed dated September 13, 1944; the deed reserved to Mr. Sivert "one fourth of all the oil and gas royalty." Then the Rogerses

2

conveyed to Osburn Dunham, by deed dated September 8, 1945, the 135-acre property and their twenty-five percent interest in the oil and gas royalty. Mr. Sivert later conveyed "one-fourth of all the oil and gas royalty" to Joseph Palmer by deed dated November 1, 1945. And Mr. Palmer, by deed dated November 4, 1945, conveyed "the undivided 1/4 interest of all the oil and gas royalty" to Mr. Dunham. So, as of November 1945, Mr. Dunham owned the 135-acre property and fifty percent of the oil and gas royalty.[5] He continued paying separate tax assessments for the 135-acre property and subjacent oil and gas interest.

Then by deed dated April 22, 1968, Mr. Dunham conveyed to Russell F. Stiles "the same land" the Rogerses conveyed to Mr. Dunham "by deed bearing the date the 8th day of September, 1945 . . . [,]" and the deed states, "There is reserved and excepted from this conveyance all exceptions and reservations contained in all prior deeds." The September 8, 1945 deed, which the 1968 deed cross-references states, "This deed is executed subject to the reservation made by James W. [S]ivert and wife, which reads as follows: the said parties of the first part in this deed reserves [sic] one fourth (1/4) of all the oil and gas royalty." After executing the 1968 deed, Mr. Dunham continued paying taxes on his twenty-five percent interest in the oil gas estate,[6] Mr. Stiles paid taxes on the

---

[5] The fifty percent interest in the oil and gas estate Mr. Huff reserved in the 1909 deed is not at issue in this case.

[6] As noted above, the parties and the circuit court refer to these royalty interests as ownership of a percentage of the oil and gas. And for purposes of our analysis, we refer to these interests using the parties' and circuit court's terminology.

135-acre property and his twenty-five percent interest in the oil and gas estate, and Mr. Stiles collected royalties on only a twenty-five percent interest in the oil and gas estate. Also reflecting the twenty-five percent interest Mr. Dunham retained after the 1968 deed, the 1968 land book contains a handwritten notation replacing Mr. Dunham's "1/2" oil and gas interest with a "1/4" interest.

So, by 1988, Mr. Stiles owned the 135-acre property and twenty-five percent of the subjacent oil and gas estate, and Mr. Dunham owned the other twenty-five percent interest in the oil and gas estate at issue in this case. But that year, Mr. Stiles paid neither the tax on the 135-acre property nor the tax on his twenty-five percent interest in the oil and gas estate, which were separately assessed. So, upon Mr. Stiles's tax delinquency, the sheriff exercised his enforceable lien and sold the 135-acre property and the twenty-five percent interest in the subjacent oil and gas rights separately at a tax sale in 1989. Respondent Richard Erlewine bought the 135-acre property, and Petitioners Trio Petroleum Corporation and Waco Oil & Gas Company bought Mr. Stiles's twenty-five percent interest in the oil and gas estate.[7] The Clerk of the Wetzel County Commission conveyed the 135-acre property to Respondent by deed dated April 1, 1991. By separate deed dated April 1, 1991, the same Clerk of the Wetzel County Commission conveyed Mr. Stiles's twenty-five percent interest in the oil and gas estate to Petitioners Trio Petroleum

---

[7] Petitioners Collingwood Appalachian Minerals I, LLC, Collingwood Appalachian Minerals III, LLC, and Oxy USA Inc. are successors in interest to Trio Petroleum Corporation and Waco Oil & Gas Company. As used in this Opinion, "Petitioners" includes the current petitioners and their predecessors.

Corporation and Waco Oil & Gas Company. Then in 1992, Mr. Dunham, the owner of the other disputed twenty-five percent interest in the oil and gas estate, failed to pay taxes on his interest. So, the sheriff sold it to Petitioners at a tax sale as well. The Clerk of the Wetzel County Commission conveyed this twenty-five percent interest to them by deed dated April 1, 1995. After the tax sales, Respondent owned the 135-acre property and Petitioners owned fifty percent of the oil and gas estate.

For decades following the tax sales, Respondent paid taxes on the 135-acre property and Petitioners paid taxes on their fifty percent interest in the oil and gas estate underlying it. Even so, on December 17, 2020, Respondent filed a complaint seeking a declaratory judgment that he owned Petitioners' fifty percent of the oil and gas estate. He alleged that the 1991 Tax Deed that purportedly conveyed the twenty-five percent oil and gas estate to Petitioners was void ab initio because the assessor lacked the authority to separately assess the delinquent taxpayer for the 135-acre property and the unsevered twenty-five percent interest in the oil and gas estate. And Respondent alleged that the 1995 Tax Deed was also void ab initio because Mr. Dunham transferred his full fifty percent interest in the oil and gas estate when he executed the 1968 deed to Mr. Stiles. So, Respondent alleged, the Clerk of the Wetzel County Commission possessed no interest to transfer in the 1995 Tax Deed.

The parties filed cross-motions for summary judgment. After a hearing on the motions, the circuit court found the 1991 and 1995 Tax Deeds void ab initio and granted

5

summary judgment for Respondent. Petitioners raise two assignments of error on appeal, contending: (1) The 1991 Tax Deed conveyed to Petitioners a twenty-five percent interest in the oil and gas estate because the delinquent property owner subjected his entire ownership interest to a tax sale when he paid the taxes on neither the 135-acre property nor the oil and gas estate, and (2) the 1995 Tax Deed conveyed to Petitioners a twenty-five percent interest in the oil and gas estate because Mr. Dunham's 1968 deed to Mr. Stiles conveyed only the twenty-five percent interest in the oil and gas estate that the Rogerses conveyed in the 1945 deed.

## II. STANDARD OF REVIEW

Petitioners appeal an order granting declaratory relief to Respondent. We apply a de novo standard of review to declaratory judgment appeals: "A circuit court's entry of a declaratory judgment is reviewed *de novo*."[8] A de novo review is anew and unqualified.[9]

## III. ANALYSIS

A. *1991 Tax Deed*

---

[8] Syl. Pt. 1, *City of Martinsburg v. Berkeley Cnty. Couns.*, 241 W. Va. 385, 825 S.E.2d 332 (2019) (quoting Syl. Pt. 3, *Cox v. Amick*, 195 W. Va. 608, 466 S.E.2d 459 (1995)).

[9] *See Gastar Expl. Inc. v. Rine*, 239 W. Va. 792, 798, 806 S.E.2d 448, 454 (2017).

The circuit court opined that "[t]he threshold issue underlying [the validity of the 1991 Tax Deed] is whether an assessor is permitted to separately assess a sole owner of both the surface estate and the unsevered mineral estate associated with that parcel." But this is not the dispositive issue as to the validity of the 1991 Tax Deed. We have held that an assessor may not separately tax unsevered mineral estates: "In case of two assessments of the same land, under the same claim of title, for any year, one payment of taxes, under either assessment, is all the State can require."[10] We have also explained that "[a] deed made pursuant to a tax sale under a void assessment is void."[11] Following this rationale, we have voided tax deeds where the property owner paid one of two separate assessments on his property and unsevered mineral estate.[12] But we have not voided a tax deed where the delinquent property owner paid neither the tax on his property nor the tax on his unsevered mineral estate. So, the threshold issue here is whether the separate, unauthorized taxation of a mineral estate invalidates a tax deed conveying it when the owner became delinquent on it *and* the tax assessed for the rest of his property interest.

---

[10] Syl. Pt. 2, *Orville Young, LLC v. Bonacci*, 246 W. Va. 26, 866 S.E.2d 91 (2021) (quoting Syl. Pt. 2 *State v. Allen*, 65 W. Va. 335, 64 S.E. 140 (1909)).

[11] Syl. Pt. 3, *Id.* at 26, 866 S.E.2d at 91 (quoting Syllabus point 4, *Blair v. Freeburn Coal Corp.*, 163 W. Va. 23, 253 S.E.2d 547 (1979)).

[12] *Bonacci*, 246 W. Va. at 35, 866 S.E.2d at 100 ("the Assessor [erred when he found] taxes to be delinquent when the erroneous, separate assessment was not timely paid.").

7

The circuit court relied primarily on *Orville Young, LLC v. Bonacci* when it decided that separate taxation automatically voids a tax deed to a mineral estate.[13] On appeal, Petitioners argue that this case differs from *Bonacci,* and Respondent argues the two cases are indistinguishable. Because we agree the case turns on *Bonacci*, we limit our analysis to its application.

In *Bonacci*, the Marshall County Assessor taxed a property owner's unsevered oil and gas estate separately from the owner's other property interests.[14] The owner paid the separate taxes for the first year but stopped paying the separate assessments on the oil and gas estate after that, so the sheriff sold it at a tax sale.[15] Years later, the property owner's successors in interest sued the tax-sale purchaser and claimed ownership of the oil and gas estate.[16] The circuit court voided the tax deed and granted summary judgment for the property owner's successors.[17] On appeal, we clarified that under West Virginia Code § 11-4-9 (1935), an assessor may not separately tax an unsevered mineral estate.[18] We affirmed the circuit court's decision to void the tax deed "because the

---

[13] *Id.* at 26, 866 S.E.2d at 91.

[14] *Id*. at 30, 866 S.E.2d at 95.

[15] *Id.* at 30-31, 866 S.E.2d at 95-96.

[16] *Id.* at 31, 866 S.E.2d at 96.

[17] *Id.*

[18] *Id*. at 34, 866 S.E.2d at 99.

8

[successors'] predecessors in interest had paid the property taxes assessed on the subject, undivided oil and gas estate [by paying the tax on the other, unsevered interest]; the taxes thereon were not delinquent; and no tax lien attached to the mineral estate that could be sold at a tax sale."[19] We reasoned that because the predecessors in interest paid the tax on the surface estate, "which includes all of its constituent parts[,]" the predecessors remained current on the taxes for value of the mineral estate.[20] We considered the payment of the single tax "one full payment of taxes on the entirety of [the] property."[21] We deemed the tax deed invalid because there was no tax delinquency, and we reiterated that "[a]ctual delinquency is a condition precedent to the right to sell land under a tax assessment. There is no such delinquency when the taxes have in fact been paid, by the owner himself or by any other person entitled to make such payment."[22]

This case materially differs from *Bonacci* because Mr. Stiles, the former property owner, paid neither the tax on the 135-acre property nor the oil and gas estate tax before the sheriff sold both at a tax sale; the property owner did not make the "one full payment" on the entirety of the property to prevent the sheriff from possessing an

---

[19] *Id*. at 29, 866 S.E.2d at 94.

[20] *Id*. at 35, 866 S.E.2d at 100.

[21] *Id.*

[22] *Id.* (quoting *State v. Allen*, 65 W. Va. 335, 339, 64 S.E. 140, 142 (1909)).

enforceable tax lien. So, unlike *Bonacci*, the condition precedent of actual tax delinquency existed before the tax sale.

The tax on an undivided property includes "all of its constituent parts," and when the assessor assessed the 135-acre property, a lien attached to Mr. Stiles's entire property interest—including the value of the property's subjacent minerals.[23] When Mr. Stiles became delinquent on both taxes, West Virginia Code § 11A-2-1 (1941) required the sheriff to enforce the lien, and the sheriff possessed the authority to sell the 135-acres of property and its unsevered oil and gas estate.[24] The sheriff's separate sale of the 135-acre property and oil and gas estate and the Clerk of the Wetzel County Commission's severance of title to the two through issuance of separate tax deeds proved harmless to the former landowner who subjected the entire property to a tax sale when he paid no taxes. As it related to the tax-sale purchasers, the process represented, if anything, an "irregularity, error or mistake" in the "procedure leading up to and including delivery of the tax deed[s]" to the tax-sale purchasers.[25]

---

[23] W. Va. Code § 11A-1-2 (1961) ("There shall be a lien on all real property for the taxes assessed thereon . . . .").

[24] W. Va. Code § 11A-2-1 ("Whenever any taxes become delinquent, it shall be the duty of the sheriff to take immediate steps to enforce payment . . . .").

[25] W. Va. Code § 11A-3-63 (1994).

10

Under West Virginia Code § 11A-3-63, no such irregularity, error, or mistake invalidates a tax-sale purchaser's tax deed unless the Legislature created a specific cause of action allowing it:

> No irregularity, error or mistake in respect to any step in the procedure leading up to and including delivery of the tax deed by the deputy commissioner shall invalidate the title acquired by the purchaser unless such irregularity, error or mistake is, by the provisions of section forty-nine of this article or section two, three, four or six, article four of this chapter, expressly made ground for instituting a suit to set aside the sale or the deed.[26]

The Legislature established grounds for a person to invalidate a tax-sale purchaser's deed for procedural errors such as, among other reasons, when (1) a prohibited purchaser bought the property at the tax sale, (2) all taxes were paid before the sale, (3) a tax-sale purchaser violated specified post-sale procedures, (4) the State Auditor failed to notify certain persons of the tax sale, or (5) a person under disability at the time of the tax sale later redeemed the property.[27] The Legislature did not specify a cause of action that allows a third party such as Respondent, not related to the delinquent owner, to challenge a tax deed on the grounds that the delinquent owner was improperly taxed or that the tax sale severed a mineral estate. This is consistent with the Legislature's stated intent "[t]o provide for the speedy and expeditious enforcement of the tax claims of the state and its subdivisions . . . [and] reduce the expense and burden on the state and its subdivisions of tax sales so that such sales may

---

[26]  *Id.*

[27]  *See* W. Va. Code §§ 11A-3-49, 11A-4-2 to 4, 6.

11

be conducted in an efficient manner while respecting the due process rights *of owners of real property . . . .*"[28]

We have effectuated the Legislature's concern with maintaining efficient tax sales and have explained the importance of their finality: "confidence in one's title to land is of paramount importance.  As we have remarked previously, 'certainty above all else is the preeminent compelling public policy to be served.'" [29]  Indeed, "finality and predictability are of the utmost importance to the tax-sale process."[30]  And we balance our concern with finality with the due process rights of the former, delinquent owner.[31]

We have no such due process concerns in this case where Respondent, a fellow tax-sale purchaser, seeks to set aside Petitioners' tax-sale deed.  Where no countervailing due process or statutory rights of a delinquent taxpayer exist, the finality and predictability of the tax sale are the State's primary concerns.  The circuit court ignored

---

[28] W. Va. Code § 11A-3-1 (2022) (emphasis added).

[29] *Mingo Cnty. Redevelopment Auth. v. Green*, 207 W. Va. 486, 491, 534 S.E.2d 40, 45 (2000) (quoting *Hock v. City of Morgantown*, 162 W. Va. 853, 856, 253 S.E.2d 386, 388 (1979)).

[30] *Lexington Land Co., LLC v. Howell*, 211 W. Va. 644, 651, 567 S.E.2d 654, 661 (2002).

[31] *See, e.g., Lilly v. Duke*, 180 W. Va. 228, 233, 376 S.E.2d 122, 127 (1988) ("If one's property has been wrongfully taken because of a constitutional due process violation, it is hardly an answer to say that such person cannot bring suit because he now lacks an interest in the property.").

those concerns when it disturbed Petitioners' 1991 Tax Deed more than thirty years later and after Petitioners and Respondent paid their taxes on and exercised dominion over their respective interests for all that time.

Petitioners purchased a valid tax deed to the oil and gas estate because, unlike *Bonacci*, the former landowner subjected the mineral estate to tax sale when he paid no taxes on the 135-acre property or the separately assessed oil and gas estate. And § 11A-3-63 protects Petitioners' title from a challenge by Respondent, a fellow tax-sale purchaser who lacks grounds to challenge Petitioners' tax-sale deed.

B.    *1995 Tax Deed*

By its terms, Mr. Dunham's 1968 deed to Mr. Stiles conveyed the same property that the Rogerses conveyed to Mr. Dunham: the 135-acre property and a twenty-five percent unsevered interest in the oil and gas estate, and the deed contained a general exception clause that "reserved and excepted from th[e] conveyance all exceptions and reservations contained in all prior deeds." Even so, the circuit court found that in the 1968 deed, Mr. Dunham conveyed his entire fifty percent interest in the oil and gas estate to Mr. Stiles. So, the circuit court reasoned that Mr. Dunham owned no interest in the mineral estate that the 1995 Tax Deed could convey.

On appeal, Petitioners argue that the 1968 deed's plain language conveyed the same twenty-five percent interest in the oil and gas estate that the Rogerses conveyed

13

to Mr. Dunham in the 1945 deed. They reason that the 1968 deed conveyed "the same land" as the 1945 deed between the Rogerses and Mr. Dunham which reflected Mr. Dunham's intent to replicate that conveyance and convey the same 135-acre property and twenty-five percent interest in the oil and gas estate that the Rogerses conveyed to him. In other words, they argue the 1968 deed cross-referenced the 1945 deed to explain the conveyance and to incorporate its express reservation of a twenty-five percent interest in the oil and gas estate. They also argue that Mr. Dunham's and Mr. Stiles's conduct after executing the 1968 deed reflects their intent for Mr. Dunham to convey only a twenty-five percent interest in the oil and gas estate.

When construing a deed, our goal is to effectuate the parties' intent whenever possible:

> In construing a deed, will, or other written instrument, it is the duty of the court to construe it as a whole, taking and considering all the parts together, and giving effect to the intention of the parties wherever that is reasonably clear and free from doubt, unless to do so will violate some principle of law inconsistent therewith.[32]

The Legislature also directs us to look to the parties' intent when we decide whether a grantor reserved a specific property interest in a conveyance:

> When any real property is conveyed or devised to any person, and no words of limitation are used in the conveyance or devise, such conveyance or devise shall be construed to pass

---

[32] *DWG Oil and Gas Acquisitions LLC, v. S. Country Farms, Inc.*, 238 W. Va. 414, 418-19, 796 S.E.2d 201, 205-06 (2017) (quoting Syl. Pt. 1, *Maddy v. Maddy*, 87 W. Va. 581, 105 S.E. 803 (1921) (emphasis removed).

14

> the fee simple, or the whole estate or interest, legal or equitable, which the testator or grantor had power to dispose of, in such real property, *unless a contrary intention shall appear in the conveyance or will.*[33]

When applying this statute, we have explained, "[i]n order to create an exception or reservation in a deed which would reduce a grant in a conveyance clause which is clear, correct and conventional, such exception or reservation must be expressed in certain and definite language."[34]

When a deed is unambiguous, we generally consider only its text to determine the grantor's intent. A deed is ambiguous when susceptible to differing or doubtful meanings: "The term 'ambiguity' is defined as language reasonably susceptible of two different meanings or language of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning."[35]

In this instance, the 1945 deed, which the 1968 deed cross-references, clarifies that the conveyance is "subject to [Mr. Sivert's] reservation" of "one fourth (1/4) of all the oil and gas royalty." Mr. Dunham later obtained the twenty-five percent interest that Mr. Sivert reserved in the 1945 deed. So, when Mr. Dunham conveyed in the 1968

---

[33] W. Va. Code § 36-1-11 (1931) (emphasis added).

[34] Syl. Pt. 2, *Hall v. Hartley*, 146 W. Va. 328, 119 S.E.2d 759 (1961).

[35] Syl. Pt. 4, *Est. of Tawney v. Columbia Nat. Res.*, *L.L.C.*, 219 W. Va. 266, 633 S.E.2d 22 (2006).

15

deed the "same land" as the 1945 deed and subjected it to Mr. Sivert's twenty-five percent reservation, he expressly reserved that twenty-five percent interest. Mr. Dunham unambiguously expressed his intent to convey the "same land" as the 1945 deed and in the very next sentence subjected the conveyance to the same twenty-five percent reservation contained in it. So, we find the language reasonably susceptible to only one meaning: Mr. Dunham conveyed to Mr. Stiles the same property interests that the Rogerses conveyed to Mr. Dunham—not Mr. Sivert's additional twenty-five percent interest in the oil and gas estate that Mr. Dunham later obtained and which was expressly reserved. By conveying the "same land" as the Rogerses' 1945 deed, the 1968 deed obviously did not convey Mr. Dunham's other twenty-five percent interest in the oil and gas estate because that would be more than the Rogerses ever owned. Our interpretation of the 1968 deed is consistent with § 36-1-11 because the deed demonstrates Mr. Dunham's "contrary intention" to devise less than his whole interest. We need not consider Mr. Dunham's and Mr. Stiles's course of conduct to interpret the unambiguous deed.

## IV. CONCLUSION

For these reasons, we reverse the circuit court's January 21, 2022 order granting summary judgment for Respondent. As the parties understood three decades ago at the tax sales, the 1991 and 1995 Tax Deeds together conveyed a fifty percent interest in the mineral estate to Petitioners. We remand for the circuit court to enter summary judgment in their favor.

16

Reversed and Remanded.